### In re H. WHITE CONSTRUCTION CO., INC., Debtor.

### Bankruptcy No. 482–00635–LC–07.

United States Bankruptcy Court, W.D. Louisiana, Lake Charles Division.

July 21, 1988.

Karl E. Boellert, Lake Charles, La., for Billy R. Sanderford.

Charles Wooten, Sr., Trustee.

## MEMORANDUM OPINION AND ORDER

W. DONALD BOE, Jr., Bankruptcy Judge.

This matter is before the Court on motion by creditor Billy R. Sanderford to compel payment of a promissory note from the proceeds of the sale of equipment allegedly mortgaged by H. White Construction Co., Inc. to Sanderford. Because determination of lien validity and an action to recover money are normally decided as adversary

proceedings governed by Rules 7001 *et seq.*, this Court ordered the filing of pre-trial stipulations (Order of February 26, 1987). Sanderford and the trustee each filed motions for summary judgment.

Sanderford's motion seeks to have the mortgage recognized and to compel the trustee, Charles N. Wooten, Sr., to pay Sanderford out of the sale proceeds. The trustee's motion and opposition allege that the mortgage to Sanderford is invalid because it was confected without proper authority, in violation of the Code's allowance of secured debt only "after notice and hearing." 11 U.S.C. sec. 364. For the following reasons, the Court finds in favor of Sanderford, and GRANTS the motion to compel payment of the promissory note.

The facts of this case are not at issue. This bankruptcy case was commenced as a voluntary case under Chapter 11 of the Bankruptcy Code in September 1982. At the request of the debtor, the Court appointed a trustee, William C. Sandoz. A chapter 11 plan of reorganization was confirmed September 15, 1983, providing for partial liquidation of the debtor, reduction in the size of the debtor's operation, and payment to secured creditors from the proceeds of the sale of their collateral (Art. III A of Debtor's Second Amended Plan of Reorganization). Except as otherwise provided in the plan, title to the debtor's property reverted to the debtor (Second Amended Plan Art. IV, para. 8). The debt to Sanderford and the mortgage were created post-confirmation.[1]

The debtor needed to fund its continued operations and Sanderford agreed to lend the debtor money. Sanderford loaned $30,000.00 to the debtor over the course of several months (all post-confirmation). Plaintiff's exhibit F shows advances on December 9, 1983, February 10, 1984, and April 16 and 30, 1984. The debtor executed promissory notes on September 20, 1983 (Plaintiff's exhibit E), and on April 30, 1984 (Plaintiff's exhibit G). These notes were secured by the pledge of a September 20, 1983 collateral mortgage and note (Plain-

---

1. All events pertinent to the motion occurred before this case was converted to Chapter 7, while the debtor was operating under the aegis of the confirmed Chapter 11 plan.

tiff's exhibits B, D, and H), encumbering a tractor and three backhoes. The collateral mortgage was recorded January 31, 1984 (Plaintiff's exhibit C). All the evidence shows the debts were incurred and the security obtained post-confirmation. The trustee does not contest the factual circumstances of the incurring of debt and security, but contests only their legal effect.

■ Sanderford believed it was not necessary to obtain approval from this Court to lend money or to encumber assets of the debtor post-confirmation. The collateral was sold at a June 1984 auction with the consent of Sanderford and with the agreement by the debtor that Sanderford would be paid from the proceeds (Affidavits of John H. White, Sr., president and CEO of the debtor, and Royce L. Dickerson, comptroller of the debtor). Charles N. Wooten, Sr., was appointed substitute trustee before the auction, however, and all sale proceeds were delivered to him for distribution. Sanderford has never been paid.

Bankruptcy Code section 364 requires court approval of an extension of credit when the trustee is authorized to operate the business of the debtor. 11 U.S.C. sec. 364(a). If unsecured credit is unavailable, the Code allows the trustee, after notice and hearing, to obtain credit "secured by a lien on property of the estate that is not otherwise subject to a lien." 11 U.S.C. sec. 364(c)(2). The Court holds that the requirements for notice and court approval were not necessary for the post-confirmation transactions at issue in this case.

Confirmation of a plan vests all of the property of the estate in the debtor unless the plan itself provides otherwise. 11 U.S.C. sec. 1141(b). The confirmed plan in this case affirmatively stated that title to the debtor's property reverted to the debtor, "except as provided hereinabove" (*i.e.*, in the plan, *see* Second Amended Plan Art. IV, para. 8).

The Court has examined the plan for restrictions on the debtor's use of its assets and does not find anything precluding the debtor from using the unencumbered tractor and backhoes to finance continued operations. The plan explained the debtor's general intention to liquidate "certain unencumbered property" within a year and to pay the liquidation sale proceeds to creditors under the priorities and preferences established by bankruptcy law (Second Amended Plan, Art. III A, p. 2 and Art. III B.15, p. 5). The plan incorporated an "equipment plan" showing the debtor's intention with respect to each item of equipment (Second Amended Plan, Art. III A). The equipment plan (filed July 11, 1983, with the Debtor's Amended Plan of Reorganization) lists a Ford and two John Deere rubber tired backhoes and an International farm tractor on page one as property *to be retained*—not as property to be sold. These four items of equipment are the same items mortgaged to Sanderford by the collateral chattel mortgage. The plan also described the debtor's intention "to dedicate its assets and its future profits to pay creditors herein" (Art. III A, p. 3).

The plan did not create or retain any lien on the tractor and backhoes in question as was the case for some of the property encumbered in favor of creditors in classes 4 through 14. Nothing in the plan precluded the debtor from mortgaging these unencumbered assets or prevented the debtor from having a "free and clear" title to the chattels in question. The Court concludes therefore that the chattels reverted to the debtor in accordance with the plan (Article IV 8) and Bankruptcy Code section 1141(b).

■ The effect of reversion of title to the debtor was discussed in *Prince v. Clare,* 67 B.R. 270 (N.D.Ill.1986):

The purpose of revesting the property in the debtor is to make the debtor in possession master of his own fate in the commercial world, free of the press of those creditors to whom he was indebted before he became a Chapter 11 supplicant.... After the plan was confirmed, the bankruptcy court no longer controlled disposition of such property; after confirmation, [the debtor's] control of the revested property was the same as if no bankruptcy case had ever been filed, except to the extent that the Plan or order confirming the Plan provides otherwise.

*Prince v. Clare,* 67 B.R. at 272 (citations omitted). Thus a debtor under a confirmed plan has the right to encumber or dispose of the assets revested in him unless this right is curtailed by the plan or the confirmation order. A debtor under a confirmed plan "is free to use its unsecured equipment as security for future loans." *General Electric Credit Corp. v. Nardulli & Sons Co., Inc. (In re Nardulli & Sons Co., Inc.),* 66 B.R. 871, 874, Bankr.L.Rep. para. 71,530 (Bankr.W.D.Pa.1986). Because the plan proposed that the debtor retain the chattels and because they were unencumbered, the Court holds that the plan did not curtail this right of the debtor to use them as collateral security.

The Court's conclusion is further supported by cases holding that the estate terminates upon confirmation. The statutory language at issue in this case applies only to debt secured by a lien on "property of the estate." 11 U.S.C. sec. 364(c)(2). Creditors of the reorganized debtor are not subject to the rules and restrictions applicable to creditors of "the estate." *See, e.g., In re Westholt Manufacturing, Inc.,* 20 B.R. 368, 6 C.B.C.2d 1068, 9 B.C.D. 181 (Bankr.D.Kan.1982) (the vesting of property in the debtor which occurs at confirmation terminates the existence of the estate), *aff'd U.S. v. Redmond,* 36 B.R. 932, 10 C.B.C.2d 1428, Bankr.L.Rep. para. 69,832 (D.Kan.1984); and *In re Barker Medical Co., Inc.,* 55 B.R. 435, 436 (Bankr.M.D.Al. 1985) (no estate exists after confirmation).

Once the plan was confirmed and the estate property was revested in the debtor, the property was no longer "property of the estate" subject to the restrictions in section 364(c)(2). The reorganized debtor was free to incur debt and to encumber the chattels without approval from this Court; the security devices appear to be in order, and the mortgage was recorded in accordance with state law. Sanderford therefore has the right to be paid out of the proceeds of the sale of his collateral. ACCORDINGLY,

IT IS ORDERED that the motion by Billy R. Sanderford to compel payment of promissory note be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the motion for summary judgment by Billy R. Sanderford be and the same is hereby GRANTED; and

IT IS FURTHER ORDERED that the motion for summary judgment by Charles N. Wooten, Sr., be and the same is hereby DENIED.