In re TRANSAMERICAN NATURAL GAS CORPORATION, et al., Debtor.

H.S. FINKELSTEIN, Plaintiff,

v.

TRANSAMERICAN NATURAL GAS CORPORATION, Defendant.

No. 84–03474–H1–11.
Adv. No. 90–0613.
Civ. A. No. L–90–64.

United States District Court,
S.D. Texas,
Laredo Division.

April 11, 1991.

Frank Douglas, Scott, Douglas & Luton, Austin, Tex., Lazaro Garza–Gongora, Lare-do, Tex., Arturo A. Figueroa, Zapata, Tex., for plaintiff.

John Nabors, Liddell, Sapp, Zivley, Hill & Laboon, David L. Nigh, Houston, for defendant.

## MEMORANDUM

KAZEN, District Judge.

On June 25, 1990, Defendant TransAmerican Natural Gas Corporation (TransAmerican) removed this action from state court and moved this Court to transfer venue and refer the case to the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division. On July 25, 1990, Plaintiff Finkelstein sought remand or abstention by this Court. Following a hearing on August 30, 1990, this Court referred the case to the Bankruptcy Court for a report and recommendation on Plaintiff's remand motion. By its report of November 5, 1990, U.S. Bankruptcy Court for the Southern District of Texas, Houston Division, the Hon. Manuel D. Leal, recommended that this action be remanded under § 1447(c) of Title 28, U.S.Code, for lack of jurisdiction.

*Background.* Plaintiff brought this action to claim a breach of duty by Trans-American based upon the settlement reached between TransAmerican and El Paso Natural Gas (El Paso) in a "take-or-pay" gas contract suit.

The La Perla Ranch natural gas field in south Texas is operated by TransAmerican and, prior to this controversy, was owned by El Paso and others. Finkelstein, among others, held an overriding royalty interest ($\frac{1}{16}$th) in the production from the field, dating from a 1974 gas purchase agreement with TransAmerican. In 1975, El Paso and TransAmerican entered a joint operating and farmout agreement for development of the field. In 1981, El Paso contracted with TransAmerican to purchase at least 80% of the production from the La Perla field whether or not it actually took delivery of the production, a so-called "take-or-pay" contract. In 1983, El Paso ceased to honor its contract; TransAmerican sued. In the same year, TransAmerican filed Chapter 11 bankruptcy. Finkelstein and the Medallion Group, a group of royalty owners which included Finkelstein,

asserted claims in the bankruptcy court to an additional royalty interest and accrued-unpaid royalties under the 1975 farmout agreement between TransAmerican and El Paso. In 1987, under the auspices of the bankruptcy court, this claim was settled with TransAmerican agreeing to pay the claimants for past royalties allegedly owed but not paid, in the amount of $2.6 million. Part of the settlement amount ($367,000) was to come from any gain from the still-pending litigation against El Paso. In addition, the settlement conveyed to Finkelstein a further 1½% royalty on the field. In 1989 the El Paso litigation, in which had been rendered a judgment of approximately $600 million against El Paso for wrongful repudiation, was settled by TransAmerican for $300 million and conveyance to TransAmerican of El Paso's mineral fee interest in the La Perla field. In exchange, TransAmerican canceled the take-or-pay contract. Finkelstein contends that TransAmerican's settlement of the lawsuit against El Paso violated TransAmerican's duties to him under Texas oil and gas law and that TransAmerican was unjustly enriched, having kept the portion of the El Paso settlement allegedly owed to Finkelstein as a royalty holder.

TransAmerican seeks the jurisdiction of the bankruptcy court, contending that this action is a core proceeding affecting or a non-core proceeding related to TransAmerican's bankruptcy estate and plan of reorganization. TransAmerican's bankruptcy plan was confirmed on September 4, 1987. Defendant asserts that the plan property included the then-pending litigation between TransAmerican and El Paso, and therefore Plaintiff's claims derived from settlement of that litigation must be heard by the bankruptcy court.

Finkelstein counters that his claim arises purely under the oil and gas laws of Texas and observes that the settlement of the TransAmerican–El Paso litigation occurred in 1989 and 1990, well after the confirmation of the bankruptcy plan.

*Bankruptcy Court's Report and Recommendation.* Judge Leal found that this cause of action arose after the plan confir-mation, as the settlement between Defendant and El Paso was not signed until December 24, 1989 and became effective on January 1, 1990. Moreover, Judge Leal concluded that Finkelstein's claim is not directly with El Paso, but rather is against TransAmerican for its handling of the settlement with El Paso.

As to TransAmerican's contention that this case should be heard with the so-called "Medallion" action, a similar case already pending in Judge Leal's court, Judge Leal determined that, while overlapping fact issues exist between the two actions, no factor compelled consideration of this case with the Medallion matter. In fact, numerous state law issues were present in this action that did not appear in the Medallion controversy, a dispute solely involving bankruptcy law.

Finally, Judge Leal addressed the extent of his court's retained jurisdiction over TransAmerican's bankruptcy estate after confirmation of its plan. While the TransAmerican–El Paso litigation was pending at the time of the bankruptcy plan confirmation, the proceeds of any future settlement were not contemplated as part of the plan beyond the $367,000 detailed under the 1987 settlement to pay for royalties owed. Therefore, Judge Leal concluded that Finkelstein's cause arose after the plan's confirmation and does not concern the provisions or implementation of the plan.

*Objections by TransAmerican.* TransAmerican has raised several specific objections to the Bankruptcy Court's Report and Recommendation. Pursuant to Bankruptcy Rule 9033(d), the Court has reviewed these objections.

■ 1. TransAmerican contends that Finkelstein's claims to a greater interest in the La Perla Ranch accrued prior to confirmation of TransAmerican's bankruptcy plan, as they are based upon the 1987 settlement between Finkelstein and the Medallion Group with TransAmerican. However, the actual claim of Finkelstein is for an alleged breach of duty by TransAmerican in settling its gas purchase contract claim against El Paso or for a portion of the El Paso settlement based upon his overriding royalty interest. Admittedly, this interest did increase due to the 1987 settlement.

However, the real issues here are not over the royalty interest itself but rather whether there was a breach of duty to market or, alternatively, whether a take-or-pay settlement should be subject to such royalties at all, both questions of Texas law. *In re Gerken Trucking, Inc.*, 10 B.R. 203, 205 (Bankr.N.D.Ohio 1981) ("Adoption of the [collective bargaining] agreement in the plan does not result in the Court's retaining jurisdiction over post confirmation controversies relating to that agreement"); *see also, In re Greenley Energy Holdings of Pa.*, 110 B.R. 173, 180–81 (Bankr.E.D.Pa. 1990) (and authorities cited therein); *In re Almarc Corp.*, 94 B.R. 361, 366 (Bankr.E. D.Pa.1988) ("While it is true that this court approved the agreement, that alone would not confer jurisdiction to resolve all subsequent disputes regardless of their connection to the bankruptcy case").

Alternatively, TransAmerican argues that the 1987 settlement set the limit of Finkelstein's claims upon the El Paso settlement in that the settlement contemplated such a future gain from the El Paso litigation and limited the amount to be paid to the claimants from such gain to $367,-000. The Court agrees with the Bankruptcy Court that this contention is erroneous. The $367,000 was for gas previously produced from La Perla and for which royalties were owing. The 1987 settlement did not involve royalties to future production. Finkelstein is now claiming a portion of the 1989 El Paso settlement amount on the basis that those funds represented payment for gas that would have been produced for and received by El Paso in the future. Such a claim was not part of the bankruptcy plan.

■ 2. Next, TransAmerican contends that this matter is within the bankruptcy court's jurisdiction due to the unavoidable impact of Finkelstein's sizable claim upon the "estate" and implementation of the plan. The mere potential of a claim to increase or decrease the pool of funds available to a debtor, without more, is insufficient to create bankruptcy jurisdiction. *See, e.g., In re Sokol*, 60 B.R. 294, 296 (Bankr.N.D.Ill.1986). In addition, the "estate" of concern ceased to exist upon confirmation of the plan in 1987. *In re White Constr. Co., Inc.*, 92 B.R. 656, 658 (Bankr.W.D.La.1988); *In re Fortner Oilfield Serv., Inc.*, 49 B.R. 9, 10 (Bankr.N.D. Tex.1984). Under the retained jurisdiction provision in the plan, any impact would have to be traced to the plan or plan property, including pending litigation. As the Bankruptcy Court correctly found, this litigation post-dates the plan. Moreover, the fund in dispute, the El Paso settlement, was not included in the schedules of the bankruptcy estate nor was it anticipated as part of the resources to fund the plan, beyond the $367,000 budgeted in the 1987 Medallion settlement to compensate the Medallion Group for unpaid royalties. Thus, the "essential nexus" between this dispute and the bankruptcy case does not exist. *In re Lindsey*, 85 B.R. 397, 398 (W.D.Tex.1988).

■ 3. TransAmerican asserts that the bankruptcy court has exclusive jurisdiction to interpret the extent of discharge of Finkelstein's claims based upon the 1987 settlement by the confirmation of the bankruptcy plan. While this assertion does hold true for the Medallion action pending before Judge Leal, it does not for this action. Medallion's action is squarely based on its interpretation of the 1987 settlement. In contrast, Finkelstein is attempting to apply his pre-existing overriding royalty to the proceeds of the 1989 El Paso settlement, contending that those funds represent gas "foregone" by TransAmerican's canceling of the gas purchase contract.

4. TransAmerican argues that this action is a "core" proceeding within the Bankruptcy Court's jurisdiction under 28 U.S.C. § 157(b)(2). TransAmerican specifically contends that this action: 1) requires a determination of the dischargeability of Finkelstein's "pre-confirmation claim" under § 157(b)(2)(I); 2) concerns the administration of the bankruptcy estate, § 157(b)(2)(A); 3) involves adjustment of a debtor/creditor relationship, § 157(b)(2)(O); 4) requires court interpretation of the effect of the plan confirmation, § 157(b)(2)(L); and, even if not a core proceeding, alternatively, 5) is within the scope of "related to" jurisdiction.

■ First, the bankruptcy "estate" ceased to exist at confirmation, such that this action cannot be construed as part of

its administration. *In re Pan American School of Travel Inc.*, 47 B.R. 242, 244 (Bankr.S.D.N.Y.1985) (suit against post-confirmation debtor has no nexus with estate administration). Moreover, Finkelstein's claim for breach of duty by Trans-American after confirmation of the plan does not fall within the enumerated matters subsumed within "case administration" by the Bankruptcy Code. *In re GHR Energy Corp.*, 60 B.R. 52, 61 (Bankr.S.D. Tex.1985).

Because Finkelstein's claim arose post-confirmation, discharge is not relevant. TransAmerican's contention that, should Finkelstein succeed in this action and gain a large judgment, TransAmerican would likely be unable to meet its obligations to other creditors is not persuasive. By such reasoning every future breach of contract by TransAmerican, no matter how unrelated to its former bankruptcy estate, could arguably be drawn into federal court as affecting its liquidity. *In re Pan American, supra* at 244 (cost of litigation insufficient to invoke post-confirmation jurisdiction).

Next, Finkelstein's suit, being post-confirmation and based on state law, does not call for interpretation of the plan's confirmation.

Finally, TransAmerican relies upon *In the Matter of Wood*, 825 F.2d 90 (5th Cir. 1987), to define the scope of post-confirmation jurisdiction. *Wood* defined the furthest limits of bankruptcy jurisdiction over controversies that arise during administration of the estate, basing jurisdiction on "whether the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Wood*, 825 F.2d at 93 (emphasis in original, quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir.1984)). By its own terms, the test limits post-confirmation jurisdiction to matters traceable to the estate as it existed at the time of confirmation. *See also Goodman v. Phillip R. Curtis Enterprises, Inc.*, 809 F.2d 228, 232 (4th Cir.1987) (after confirmation, "matters concerning the disposition of ... non-plan assets would not affect the implementation or execution

of the Plan"). Post-confirmation jurisdiction is of a limited nature. *See, e.g., Greenley Energy, supra* at 180, and *Pan American, supra*. As discussed above, the matters in dispute here were not part of the 1987 plan assets and could have no conceivable effect on the administration of the "estate." *See* para. 2, *supra*.

5. TransAmerican's final specific objection is that, as a matter of efficiency, the Medallion matter and this action should be tried together as they involve the same 1987 settlement agreement. The distinctions between the Medallion Group's claim for a greater royalty interest and Finkelstein's current claim have been dealt with above and by Judge Leal. As Judge Leal reasoned, this controversy is much more aptly resolved in the Texas courts as numerous state law issues will need resolution. The same cannot be said for the Medallion action. The Court is persuaded that Judge Leal has properly balanced the concerns of equity and judicial economy and arrived at a proper conclusion.

As one court has noted, the "order of confirmation marked the commencement of the period when a debtor was weaned from dependence on the bankruptcy court ... so as to stand on its own feet with respect to post-confirmation matters." *In re Morgan & Morgan, Inc.*, 24 B.R. 518, 521 (Bankr.S. D.N.Y.1982).

Pursuant to Bankruptcy Rules 9027(e) and 9033(d), this Court has reviewed the Bankruptcy Court's Report and Recommendation and the additional objections and submissions by each side. The Court is persuaded that Judge Leal has appropriately and fully weighed the jurisdictional prerequisites governing this question, and therefore his Report and Recommendation is ADOPTED. Pursuant to § 1447(c) of Title 28, U.S.Code, this case shall be REMANDED to the District Court for the 49th District, Zapata County, Texas.