WALNUT ASSOCIATES

v.

**Daniel H. SAIDEL, et al.**

**Civ. A. No. 93–CV–2795.**

United States District Court,
E.D. Pennsylvania.

Feb. 23, 1994.

Mitchell A. Kramer, Joseph P. Walsh, Mitchell A. Kramer & Associates, Jenkintown, PA, for plaintiff.

Carl W. Hittinger, Alan J. Davis, Ballard, Spahr, Andrews and Ingersoll, Stanley Weinberg, Saidel, Sand and Saidel, Philadelphia, PA, for defendants.

### MEMORANDUM and ORDER

BECHTLE, District Judge.

Presently before the court are defendants Daniel H. Saidel, Jonathan A. Saidel, Richard M. Sand, individually and t/a Saidel, Sand, & Saidel, and James J. Smith's motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction or 12(b)(6) for failure to state a claim, or in the alternative, for abstention, plaintiff Walnut Associates' responses, and defendants' replies thereto. For the following the reasons, the court will grant defendants' motion to dismiss.

### I. Background

The plaintiff in this case is Walnut Associates (hereinafter "plaintiff"), a reorganized bankrupt limited partnership whose single largest asset was, at all relevant times, its ownership interest in the MetroBank building located at 1528 Walnut Street, Philadelphia, Pennsylvania. Plaintiff filed its complaint alleging eight state law claims against defendants Daniel H. Saidel, Jonathan A. Saidel, Richard M. Sand, individually and t/a Saidel, Sand, & Saidel, a Law Partnership, and James J. Smith (hereinafter "defendants").[1] Plaintiff's complaint has asserted no federal claims against defendants nor is there any diversity jurisdiction.

Plaintiff, a limited partnership, immediately preceding its bankruptcy, owned and operated the MetroBank building. During its ownership of the building, plaintiff experienced cash flow problems and encountered difficulties in paying the expenses which arose in connection with the maintenance and operation of the building. Consequently, plaintiff was unable to supply its tenants with heat and provide building maintenance. Thereafter, many of the tenants vacated the MetroBank building or withheld rental payments and plaintiff soon became enmeshed in legal disputes concerning the building. *See In re Walnut Assocs.*, 145 B.R. 489, 492 (Bankr.E.D.Pa.1992).

Plaintiff filed its voluntary petition in bankruptcy under chapter 11 on September 31, 1991. The United States Bankruptcy Court for the Eastern District of Pennsylvania, by Order dated February 19, 1992, confirmed plaintiff's amended plan of reorganization. The amended plan envisioned primarily the sale of the MetroBank building, the debtor's single largest asset. *See Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss*, Exhibit A, ¶ 5.1.2. In addition, the amended plan provided for continued jurisdiction of the estate only until the plan's full consummation.[2] Shortly after the confirmation, in March 1992, a General

---

1. The eight state law claims are as follows: counts one and two—commercial disparagement; counts three and four—tortious interference with existing contractual relations; counts five and six—tortious interference with prospective business relations; count seven—legal malpractice; and count eight—civil conspiracy.

2. Paragraph 9.5 of the amended plan reads in pertinent part as follows:

> Until the Plan has been *fully consummated,* the Bankruptcy Court shall retain jurisdiction for all purposes including, but not limited to, the following: . . . .

*See Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss,* Exhibit A, ¶ 5.1.2 (emphasis supplied).

Electric Capital Corporation entity, 1528 Newco Associates, purchased the MetroBank building from Walnut Associates. *In re Walnut Associates,* 145 B.R. 489, 493 (1992).

In addition to the above, the bankruptcy court, by Order dated June 10, 1992, authorized the debtor Walnut Associates, the plaintiff in the above captioned action, to employ Mitchell Kramer, Esquire, "as special counsel to represent [the debtor] with claims and matters and causes of action related to its ownership" of the MetroBank building. *See Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss,* Exhibit C. Mitchell Kramer, allegedly acting in his role as special counsel to the debtor, is plaintiff's counsel and filed the instant suit on plaintiff/debtor's behalf.

The bankruptcy court entered its final decree in debtor's bankruptcy case pursuant to Bankruptcy Rule 3022 on April 15, 1993, after providing due notice and after all parties in interest were in attendance at the bankruptcy court's hearing on April 14, 1993.[3] Plaintiff filed its complaint in the instant matter on May 26, 1993, nearly a month and a half after the bankruptcy case was closed. At no point before entry of the final decree on April 15, 1993, did plaintiff or plaintiff's counsel seek to have either the bankruptcy court or the district court retain jurisdiction with respect to the claims in plaintiff's complaint.

## II. *Standard For Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(1)*

■ A district court can grant a dismissal pursuant to Fed.R.Civ.P. 12(b)(1) based on the legal insufficiency of a claim. Dismissal is proper only when the claim clearly appears to be immaterial and solely for the purpose of obtaining jurisdiction, or is wholly insubstantial and frivolous. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1408–09 (3d Cir.), *cert. denied,* — U.S. —, 111 S.Ct.

2839, 115 L.Ed.2d 1007 (1991). *See also Lunderstadt v. Colafella,* 885 F.2d 66, 70 (3d Cir.1989) (court may dismiss for lack of jurisdiction only if claims are "insubstantial on their face") (citations omitted).

■ A federal court, in deciding a motion to dismiss for lack of subject matter jurisdiction, presumptively lacks jurisdiction over a proceeding unless plaintiff affirmatively demonstrates that jurisdiction exists. *Lucas v. Gulf & W. Indus., Inc.,* 666 F.2d 800, 805 (3d Cir.1981). Thus, when subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of persuasion. *Id. See also Kehr Packages,* 926 F.2d at 1409 (citing *Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)). In a complaint filed in bankruptcy court, the fact that the debtor is a party to the proceeding does not automatically confer subject matter jurisdiction. *See In re M. Paolella & Sons, Inc.,* 85 B.R. 965, 970 (Bankr.E.D.Pa.1988). Finally, when considering a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(1), the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits, documents or testimony, to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988) (citations omitted), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989); 2A J. MOORE, FEDERAL PRACTICE, ¶ 12.07[2.–1], at 12–47 to 12–49.

## III. *Discussion*

■ Defendants argue in their motion to dismiss that because the bankruptcy estate has been fully administered, and because the bankruptcy case has been officially closed, the court lacks subject matter jurisdiction to hear plaintiff's adversary complaint. In its response, plaintiff argues that the bankruptcy court's authorization of the debtor to em-

---

**3.** By Order dated April 15, 1993, titled *OMNIBUS ORDER DIRECTING PAYMENTS TO BE MADE UNDER AMENDED PLAN OF REORGANIZATION, AUTHORIZING WITHDRAWAL OF COUNSEL FOR THE DEBTOR, AND CLOSING THE CASE,* the bankruptcy court ruled:

[F]ollowing a hearing on April 14, 1993 to consider ... whether or not this Chapter 11

case should be closed, and it appearing that all parties in interest in attendance at said hearing consented to the entry of this Order, it is ... ORDERED that the Chapter 11 case of the above-named Debtor is CLOSED.

*See Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss,* Exhibit F.

ploy special counsel to bring these type of "non-core" claims is sufficient to confer federal jurisdiction. The court finds that where a bankruptcy case is closed and the estate no longer exists, and where plaintiff does not seek to have the bankruptcy case opened for cause pursuant to 11 U.S.C. § 350(b) and Bankruptcy Rule 5010, the court is without jurisdiction to entertain any proceedings, irrespective of whether those proceedings are defined as "core" or related "non-core" proceedings.

### A. *Bankruptcy Jurisdiction Pursuant to 28 U.S.C. § 1334(b)*

In this case, the court must determine whether it can entertain subject matter jurisdiction over the instant adversary proceeding, alleging only state law claims. The bankruptcy courts are granted jurisdiction pursuant to 28 U.S.C. § 1334. In relevant part, this section reads as follows:

§ 1334. **Bankruptcy cases and proceedings**

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334.

The Third Circuit in *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261 (3d Cir.1991), analyzing the jurisdiction under section 1334(b), stated:

It is well settled that the bankruptcy court potentially has jurisdiction over four types of title 11 matters, pending referral from the district court: (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.... The first of these

categories, cases under Title 11, "refers merely to the bankruptcy petition itself." *Id.* at 264 (citations omitted). The Third Circuit determined that the action it had before itself in *Marcus Hook* did not involve the bankruptcy petition itself, and therefore, the court analyzed whether the action fell within one of the latter three categories of section 1334(b). In regard to this, the *Marcus Hook* court stated:

It is not necessary, though to fit the proceeding into one of these particular categories since "they operate conjunctively to define the scope of jurisdiction." ... Hence, we need only determine "whether a matter is at least 'related to' the bankruptcy."

A proceeding is related to bankruptcy if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy".... Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on "the debtor's rights liabilities, options, or freedom of action" or the "handling and administration of the bankrupt estate."

*Id.* (citations omitted). Bankruptcy jurisdiction pursuant to section 1334(b) thus extends to proceedings that "could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). The court's jurisdiction pursuant to section 1334(b), however, changes after the bankruptcy court confirms the plan for reorganization.

### B. *Bankruptcy Court's Jurisdiction During Post-Confirmation Proceedings*

██ In this case, the bankruptcy court confirmed the amended plan for reorganization of the debtor on February 19, 1992. Although the jurisdiction of the bankruptcy court continues until the Chapter 11 case is closed, *see In re Fortner Oilfield Servs., Inc.,* 49 B.R. 9, 10 (Bankr.N.D.Tex.1984), once a plan has been confirmed, the court's jurisdiction begins to weaken.[4] *See Walnut Assocs.,*

4. As one court stated:
Theoretically, one may ask first whether there is an "estate" after the confirmation of a

Chapter 11 plan.... *see also In re H. White Constr. Co., Inc.,* 92 B.R. 656, 659 (Bankr. W.D.La.1988) (cases hold estate terminates

145 B.R. at 495. "There exists a residue, albeit limited, of court authority over a confirmed chapter 11 case." *In re Cinderella Clothing Indus., Inc.,* 93 B.R. 373, 377 (Bankr.E.D.Pa.1988). As the *Cinderella Clothing* court stated: "[C]ourts have recognized the competing interests between retaining jurisdiction after confirmation until entry of the final decree (*see* Bankr.R. 3020), and ending the 'tutelage' status of reorganization, a period 'which may limit and hamper [the corporation's] activities and throw doubt upon its responsibility.'" *Cinderella Clothing,* 93 B.R. at 376 (citing *North Am. Can Corp. v. Peerless Weighing & Vending Mach. Corp.,* 143 F.2d 938, 940 (2d Cir.1944)).

■ Indeed, after a plan has been confirmed, subject matter jurisdiction is specifically conferred on the bankruptcy court to resolve only post-confirmation matters, including issues necessary to carry out the plan.[5] *See* Bankruptcy Rule 3020(d) ("notwithstanding the entry of the order of confirmation, the court may enter all orders necessary to administer the estate."); 11 U.S.C. § 1142. Section 1142 empowers bankruptcy courts to enter orders necessary to implement plans of reorganization.[6] *See Zerand–Bernal Group, Inc. v. Cox,* 152 B.R. 927, 931 (Bankr.N.D.Ill.) ("[P]lain text [of section 1142(b) ] leaves little doubt that post-confir-

upon confirmation); *In re Westholt Mfg., Inc.,* 20 B.R. 368, 372 (Bankr.D.Kan.1982) ... ("At confirmation, all the property of the estate is vested in the debtor, thereby terminating the estate's existence, although the court has continued jurisdiction under Section 1142 to oversee the plan's execution.").
*In re Mold Makers, Inc.,* 124 B.R. 766, 767 (Bankr.N.D.Ill.1990).

**5.** *See also In re Dilbert's Quality Supermarkets, Inc.,* 368 F.2d 922, 924 (2d Cir.1966) (bankruptcy's court's jurisdiction continues post-confirmation to "protect its confirmation decree, to prevent interference with the execution of the plan and to aid otherwise in its operation," until entry of a final decree). *Accord, In re Pittsburgh Terminal Coal Corp.,* 183 F.2d 520 (3d Cir.) (jurisdiction of bankruptcy court depends upon provisions of confirmed plan and reservations, not inconsistent therewith, contained in order of confirmation."), *cert. denied sub nom., Pittsburgh Terminal Realization Corp. v. Heiner,* 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654 (1950); *In re Greenley Energy Holdings, Inc.,* 110 B.R. 173, 185 (Bankr. E.D.Pa.1990) (jurisdiction retained to resolve

mation jurisdiction exists to the extent necessary to consummate the plan."), *aff'd,* 158 B.R. 459 (N.D.Ill.1993); *Allied Technology, Inc. v. R.B. Brunemann & Sons, Inc.,* 25 B.R. 484, 499 (Bankr.S.D.Ohio 1982).

■ The court in *In re Terracor,* 86 B.R. 671 (Bankr.D.Utah 1988), held that "the clear intent of section 1142(b) is for the court to retain its jurisdiction to assure that the terms and provisions of the confirmed Chapter 11 plan are carried out until the plan is completed and a final decree is entered closing the case." *Id.* (citing 11 U.S.C. § 350(a) and Bankruptcy Rule 3022). Although the confirmation of a Chapter 11 plan does not automatically terminate the jurisdiction of the bankruptcy court, the bankruptcy court's jurisdiction does not extend forever. *See In re A.J. Mackay Co.,* 50 B.R. 756 (D.Utah 1985). Rather, pursuant to Bankruptcy Rules 3020 and 3022, bankruptcy courts retain jurisdiction over the post-confirmation administration of the estate until the entry of a final decree. *In re Brooks Fashion Stores, Inc.,* 124 B.R. 436, 441 (Bankr.S.D.N.Y.1991) (citing, in part, *In re Almarc Corp.,* 94 B.R. 361, 364 (Bankr.E.D.Pa.1988)). A court enters a final decree, pursuant to Rule 3022, once a case has been fully administered.[7] *See In re BankEast Corp.,* 132 B.R. 665, 668 n. 3 (Bankr.D.N.H.1991) (a chapter 11 estate

patent ambiguities or disputes which affect operation of plan between interested parties).

**6.** Section 1142 provides in relevant part:

(b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.
11 U.S.C. § 1142.

**7.** Bankruptcy Rule 3022 states in full:

### FINAL DECREE IN CHAPTER 11 REORGANIZATION CASE

After an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case.
Rule 3022 works together with section 350 of the Code which requires the closing of a bankruptcy case "after an estate is fully administered." 11 U.S.C. § 350(a).

is "fully administered" pursuant to Bankruptcy Rule 3022 at point of substantial consummation as defined by section 1101(2) of the Bankruptcy Code.) Therefore, after confirmation of the plan, the bankruptcy court's jurisdiction weakens with the passing of two related events in the life of a bankruptcy case: (1) the consummation or administration of the plan; and (2) the entry of a final decree pursuant to Bankruptcy Rule 3022.

To determine whether a bankruptcy case has been "fully administered" or "substantially consummated" for the purposes of entering a final decree, a court must review the requirements established by 11 U.S.C. § 1101(2). Section 1101(2) defines "substantial consummation" as follows:

"substantial consummation" means—

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

Similarly, consistent with section 1101(2), when a bankruptcy court closes a case pursuant to Rule 3022, the rule's committee note enumerates the factors for a bankruptcy court to consider when deciding whether a plan has been "fully administered" and thus whether a case should be closed. *See* Bankruptcy Rule 3022, *Advisory Committee Note.*[8] One of the factors a court reviews to determine the efficacy of closing the case is whether all property proposed to be transferred by the plan has indeed been transferred. At least one other court has found the committee note to section 3022 helpful:

The Court finds the Committee Note to the new rule illuminative and essentially adopts its language. Noteworthy, however, is that all of the factors in the Committee Note need not be present before the Court will enter a final decree. Instead, the Committee Note and the factors therein merely serve as a guide in assisting the Court in its decision to close a case.... [I]n this case, the Debtor's estate has been fully administered, and the plan has been consummated. It is time for the Debtor to get on with its business and leave the shadows of the Court.

*In re Mold Makers, Inc.,* 124 B.R. 766, 768–69 (Bankr.N.D.Ill.1990).

■ In this case, the plan primarily envisioned the sale and transfer of the MetroBank building. *See Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss,* Exhibit A, ¶ 5.1.2. Plaintiff concedes that its single largest asset was the MetroBank building. *See Plaintiff's Memorandum Of Law In Opposition To Defendants' Motion To Dismiss,* at 6. Accordingly, the building was sold pursuant to the plan in or around March 1992, with the effect of this sale being the "substantial consummation" of the plan. The bankruptcy court, therefore, properly closed the case without objection from the plaintiff-debtor.

### C. Bankruptcy Court Cannot Extend Jurisdiction By Order of Court

Plaintiff in its complaint is not attempting to re-open the bankruptcy case for cause

---

8. The advisory committee note to the 1991 amendments to Rule 3022 reads in full:

Entry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed. Factors that the court should consider in determining whether the estate has been fully administered include (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.

The court should not keep the case open only because of the possibility that the court's jurisdiction may be invoked in the future. A final decree closing the case after the estate is fully administered does not deprive the court of jurisdiction to enforce or interpret its own orders and does not prevent the court from reopening the case for cause pursuant to § 350(b) of the Code....

pursuant to 11 U.S.C. § 350(b),[9] nor does plaintiff ask the court to "enforce or interpret its own orders," or resolve conflicting orders of the court. *Cf. In re Marcus Hook,* 943 F.2d at 265 ("[I]t is doubtful that an estate can be fully administered, consistent with Rule 3022, until conflicting orders are reconciled."). Plaintiff admits that the "[t]he present case does not solicit the Court's assistance in interpreting a plan of reorganization." *See Memorandum Of Law In Opposition To Defendants' Motion To Dismiss,* at 4–5. Rather, plaintiff mistakenly argues that the bankruptcy jurisdiction somehow remains indefinitely because the bankruptcy court authorized continued jurisdiction over this case and, in particular, over these types of "non-core" proceedings.

▮ Plaintiff argues that the bankruptcy court's June 10, 1992 order authorizing employment of special counsel by the debtor to file this type of complaint extends federal jurisdiction over this case. Plaintiff asserts that when the complaint was filed and the fact that the case was closed has no bearing on this court's jurisdiction because debtor was authorized by the court to initiate this type of complaint.

Plaintiff, however, filed its complaint two weeks after the entry of the final decree closing the bankruptcy case, and well after the plan had been fully consummated with the sale of the MetroBank building. Indeed, plaintiff made no objections, after due notice by the bankruptcy court, *see supra* note 3, to the entry of the final decree,[10] and will not now be heard to claim federal jurisdiction predicated on a disingenuous argument that the bankruptcy's court jurisdiction somehow

is limitless. As the court instructed in *In re Rush,* 49 B.R. 158 (Bankr.N.D.Ala.1985):

> The matter before the Court raises the question of whether an adversary proceeding such as the one here may have any life independent of the bankruptcy case in which it is instituted. It appears obvious that the adversary proceeding could be not brought in the bankruptcy court if there were no bankruptcy case in which it might be instituted. In other words, the matters complained of in the adversary proceeding must have some semblance of relationship to a bankruptcy case in order to make it the business of the bankruptcy court.... [T]he bankruptcy judge does not see how, in legal theory, the adversary proceeding can survive the closing of the bankruptcy case in which it was commenced, nor does it appear that the bankruptcy court can enter an order in an adversary proceeding which terminated before or at the time that the bankruptcy case was closed, unless the bankruptcy case is reopened.

*Id.* at 161. Indeed, in contrast to this case, the *Rush* court denied jurisdiction to adversary proceedings that had a greater nexus to the bankruptcy case inasmuch as the *Rush* proceedings had been filed before the bankruptcy case was closed. Thus, the reasoning in *Rush* is considerably stronger in the present case where the adversary proceedings had been filed well after the bankruptcy case was closed.

▮ Moreover, a bankruptcy court cannot grant federal jurisdiction beyond that which is allowed by law. A reservation of jurisdiction beyond what is necessary to effectuate the plan of reorganization is beyond

**9.** Local Bankruptcy Rule 5009.1, *CLOSING OF CHAPTER 11 CASES,* for the United States Bankruptcy Court for the Eastern District of Pennsylvania states in full:

> Within 180 days after confirmation of a Chapter 11 Plan, the court shall enter a Final Decree closing the case, unless a motion to keep the case open for cause stated is filed with the six-month period.

**10.** Had plaintiff objected at the entry of final decree, and had the court sustained the objections, the court's jurisdiction would have continued. As the Third Circuit in *Marcus Hook* instructed:

> We hold that the present proceeding is related to bankruptcy. A party moving for final decree asks that the case be closed because the estate has been fully administered. 11 U.S.C. § 350 (1988). Bankr.R. 3022. Should the objection to the motion for final decree be sustained, the bankruptcy court would retain its power to issue any orders necessary to administer the estate. Bankr.R. 3020(d); *In re Bryant,* 111 B.R. 474, 477 n. 2 (E.D.Pa.1990) (bankruptcy court still has jurisdiction even though debtor's underlying bankruptcy had been discharged because the case was not closed).
> *Marcus Hook,* 943 F.2d 261, 265 (3d Cir.1991).

the power of the bankruptcy court. *Reese v. Beacon Hotel Corp.,* 149 F.2d 610, 611 (2d Cir.1945). The bankruptcy court cannot obtain that power merely by inserting a provision in the plan or order of confirmation reserving jurisdiction, nor can the bankruptcy court reserve such jurisdiction by issuing an order. *See In re Tri–L Corp.,* 65 B.R. 774, 778–79 (Bankr.D.Utah 1986) (a reservation of jurisdiction in a plan or confirmation order "beyond what is necessary to effectuate the plan of reorganization is beyond the power of the bankruptcy court"); *In re Almarc Corp.,* 94 B.R. 361, 365–66 (Bankr. E.D.Pa.1988) ("To the extent the outcome of the dispute, be it an adversary proceeding or contested matter, would have no conceivable effect upon the administration of the bankruptcy case, then a bankruptcy court possesses no jurisdiction to hear it, whatever the language of a confirmed plan."); *In re Cary Metal Products, Inc.,* 152 B.R. 927 (Bankr. N.D.Ill.1993) ("The Court cannot reserve what does not exist."); *In re BankEast Corp.,* 132 B.R. 665, 667 (Bankr.N.H.1991) (same).

Thus, the bankruptcy court's June 10, 1992 order cannot extend jurisdiction over a case that no longer exists. Moreover, in the same breath, plaintiff is wrong to suggest that because these proceedings are related "non-core" proceedings, the court has jurisdiction. The determination of whether the proceedings are "core" or "non-core," however, is irrelevant to a determination of whether this court has jurisdiction. *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 266 (3d Cir. 1991) ("Whether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction."). As the court stated in *Eubanks v. Esenjay Petroleum Corp.,* 152 B.R. 459 (E.D.La.1993) stated:

> [I]t is irrelevant whether a particular proceeding is "core" or "non-core" if the inquiry is whether that proceeding falls within the scope of 28 U.S.C. §§ 1334(a) and (b).... Proceedings outside the scope of 28 U.S.C. § 1334(a) and (b) cannot be referred to a bankruptcy court by a district court pursuant to 28 U.S.C. § 157.

*Id.* at 462. *See also In re Cary Metal Products, Inc.,* 152 B.R. 927 (Bankr.N.D.Ill.1993) ("[Section] 157(b) does not provide an independent source of jurisdiction to hear [the] complaint. It merely allocates the jurisdiction created by 28 U.S.C. § 1334 between core and non-core proceedings.").

### IV. *Conclusion*

The court, therefore, for the foregoing reasons will dismiss the above-captioned case on the ground that this court's limited post-confirmation jurisdiction to oversee the implementation of the plan permits us only to clarify patent ambiguities in the confirmed plan or interpret matters concerning the plan's operations which impact upon its effectuation. Indeed, where, as in this case, the bankruptcy case has been closed pursuant to Rule 3022, this court does not retain any jurisdiction that would permit it to hear plaintiff's adversary complaint, regardless of whether the bankruptcy court at an earlier time authorized plaintiff to employ counsel to bring these types of claims.

### ORDER

AND NOW, TO WIT, this 22nd day of February, 1994, upon consideration of defendants Daniel H. Saidel, Jonathan A. Saidel, Richard M. Sand, individually and t/a Saidel, Sand, & Saidel, and James J. Smith's motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction or 12(b)(6) for failure to state a claim, or in the alternative, for abstention, plaintiff Walnut Associates' responses, and defendants' replies thereto, IT IS ORDERED that defendants' motion to dismiss is *granted.* Accordingly, the above-captioned case is *dismissed* with prejudice.