### In re CRAIG'S STORES OF TEXAS, INC., Debtor.

**Bank of Louisiana, Appellant,**

v.

**Craig's Stores of Texas, Inc., Appellee.**

CIV.A. No. H–97–3753.

United States District Court,
S.D. Texas,
Houston Division.

March 22, 2000.

William Alfred Wood, III, Houston, TX, for Appellant.

James J. Hansen Houston, TX, John H. Glover Houston, TX, for Appellee.

Opinion on Dismissal

HUGHES, District Judge.

1. *Introduction.*

As a reorganized debtor, a retail store brought this breach of contract action against the bank furnishing credit manage-

ment for the store's credit cards. This action was instituted in the bankruptcy court 18 months after the store's plan was confirmed, and it was appealed here to the district court. Bankruptcy jurisdiction was improperly used, requiring dismissal, but were federal jurisdiction available, the judgment was not supported by the record, requiring reversal in any event.

## 2. *Background.*

In November of 1989, the Bank of Louisiana contracted with Craig's Stores of Texas to administer Craig's private-label credit cards and to buy Craig's accounts receivable. Four years later Craig's filed to reorganize, and the bankruptcy court confirmed Craig's reorganization plan in late 1994.

In mid–1996, the store brought a breach of contract claim against the bank, asserting that it had mishandled the credit accounts. Craig's says the bank's errors resulted in excessive charge-backs of the accounts and the eventual closure of its stores.

## 3. *Procedure.*

The bankruptcy court entered a partial final judgment for Craig's. The bank appealed, claiming that the evidence was insufficient to establish either a breach or causation. The bankruptcy court entered a supplemental final judgment, increasing the store's recovery. Craig's then cross-appealed the bankruptcy court's denial of its request for attorney's fees and additional damages.

At a hearing on the cross-appeals, this court questioned jurisdiction.

## 4. *Jurisdiction.*

■ Like all federal courts, the bankruptcy court has limited jurisdiction. The bankruptcy court is essentially a master in chancery to assist the district court in reorganizations; the statutory complications attempt to institutionalize and regulate this significant adjunct to the district courts.

■ The authority of the bankruptcy court may extend to those matters arising in and related to the bankruptcy itself, but the parties cannot confer jurisdiction on bankruptcy courts by consent or waiver. *Industrial Addition Ass'n v. Comm'n of Internal Revenue No. 118,* 323 U.S. 310, 312, 65 S.Ct. 289, 89 L.Ed. 260 (1945).

■ The bankruptcy court has jurisdiction over the contents of the bankruptcy estate, which ceases to exist after confirmation. *In re Fairfield Communities, Inc.,* 142 F.3d 1093, 1095 (8th Cir.1998). Generally, after the bankruptcy court confirms a reorganization, the court retains jurisdiction only to execute the confirmed plan. *Goodman v. Phillip R. Curtis Enterprises, Inc.,* 809 F.2d 228, 232 (4th Cir. 1987). A cause of action that arises after confirmation belongs to the re-organized entity alone, which is "reborn" by the confirmation of the plan, and generally is beyond the bankruptcy court's jurisdiction—protective or otherwise.

■ Bankruptcy courts have narrowly circumscribed post-confirmation jurisdiction. A reorganized entity cannot remove a suit against it to federal court as a federal question only because the entity formerly was under the bankruptcy court's jurisdiction. The earlier federal judgment is simply a defense that the party must assert in state court. *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998). Similarly, a bankruptcy court does not have jurisdiction to hear claims arising after the entry of the confirmation order. By definition, post-confirmation claims are outside of the plan's scope and lie beyond the bankruptcy court's jurisdiction. *Fairfield,* 142 F.3d 1093, 1095. The principle is that "The debtor is not entitled to a permanent umbrella shielding it from all law suits." *In re Morgan & Morgan, Inc.,* 24 B.R. 518, 520 (Bkrtcy.S.D.N.Y.1982).

## 5. *Retention of Jurisdiction.*

In this case, the bankruptcy court maintained post-confirmation jurisdiction over

article 15.1 of Craig's amended plan of reorganization. Craig's says that jurisdiction is proper because (a) the contract between new Craig's and the bank existed before confirmation; (b) the contract was continued under the plan; and (c) the resolution of the claim could affect Craig's ability to make payments under the plan. Craig's asserts that the bank has breached the contract since 1994.

■■■ Though an award of damages would provide Craig's with additional funds, "the mere potential of a claim to increase or decrease the pool of funds available to a debtor, without more, is insufficient to create bankruptcy jurisdiction." *In re TransAmerican,* 127 B.R. 800, 803 (S.D.Tex.1991). The bankruptcy court's post-confirmation jurisdiction would be unlimited if it were based only on whether a matter affected the debtor's ability to make payments under reorganization.

■■■ Craig's claim does not directly relate to the plan's execution—like deeds not signed or assets not delivered. Instead, Craig's requests affirmative relief for damages resulting from a breach of contract. The contract did not arise under the plan; of course, Craig's got its rights to the contract through the plan in some sense because it was created by the plan. Even if the bank first breached the contract before confirmation, the claim brought by Craig's in 1996 was not pending on the date of confirmation as required by the plan. Also, the breach of contract claim does not fall within the scope of normal post-confirmation matters in the bankruptcy process.

The breach of contract claim—whenever and however generated—belongs to the new Craig's, a post-reorganization entity that the plan created. The new Craig's assumed liabilities of the old Craig's, which ceased to exist. This is a common law contract case not a bankruptcy matter.

### 6. *Merits of the Appeal.*

Even assuming the bankruptcy court did have jurisdiction, the judgment for Craig's would be reversed on the issues raised in the appeal.

### A. *Preserving Error.*

■■■ An over-ruled pre-trial motion in limine to exclude expert testimony does not preserve error on appeal. *Marcel v. Placid Oil Co.,* 11 F.3d 563, 567 (5th Cir. 1994). Generally, the complaining party must object to contested expert testimony at trial so that the trial court can correct the error when it occurs and preserve it on appeal. FED.R.EVID. 103(a). The bank did not object to the testimony of William Bloom and Thomas Westcott at trial; therefore, the bank must show that admitting their testimony was plain error affecting substantial rights. FED.R.EVID. 103(d). The bankruptcy court's admission of Bloom and Westcott's testimony as experts was plain error.

### B. *Admission of Expert Testimony.*

■■■ The trial judge must ensure that all expert testimony admitted at trial is reliable. To be admissible as expert testimony, the conclusions must be based on reliable methodology. Reliable methodology has these characteristics:

It can be or has been tested.

It has been subjected to peer review and publication.

It has an acceptable potential rate of error.

It does not rely heavily on subjective evaluation.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 588–9, 593–5, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

### C. *Bloom's Testimony.*

■■■ Craig's offered the expert testimony of William Bloom to prove breach of contract. Though Bloom has extensive experience in credit card management, his methodology for evaluating the bank's handling of the Craig's accounts was unre-

liable. Instead of gathering independent evidence, Bloom subjectively evaluated the bank's performance based on narratives written by the president of Craig's, Robert Grossman. Bloom's conclusions cannot be verified because they are predicated on the subjective evaluations he and his screening committee made. No standard that could be tested was articulated. Moreover, before this case, other industry experts had never used Bloom's methodology to determine negligence.

Most important, Bloom's conclusion that 91.8% of all the accounts were mishandled by the bank makes the reliability of Bloom's methodology highly suspect. Bloom fell victim to the trap of false precision. A more reasonable conclusion would have been an estimate of the percentage of mishandled accounts—like 85 to 95 percent. Bloom attached a statistic to his own business judgment rather than objectively ascertaining an industry standard.

### D. Westcott's Testimony.

■ Westcott was not qualified to testify as an expert on the damages sustained by Craig's. Like Bloom, Westcott has no logical basis for his method of calculating the bank's ill-gotten gains. He analyzed two samples of 1995 data—one from February of 2,143 accounts and one from November of 970 accounts—and decided that the bank was negligent 51% and 71% of the time. Because he then averaged the results from the two samples, Westcott assumed that the bank acted negligently 60% of the time from January 1994 to October 1996. Westcott did not give weight to the number of accounts handled in each month. He also predicated his conclusions on Bloom's unreliable ones—making his exponentially more unreliable.

### E. Causation.

■ Craig's must prove that a breach of contract by mishandling of accounts on the part of the bank caused the specific damages sought. Craig's closed its last two stores in May 1995. The majority of accounts went bad after the closures. In October 1995, Craig's hired Equifax to collect outstanding debts. This led to double calling of customers. Eventually, Craig's bought back all the remaining 90–day accounts. The bank did not suddenly become inept in handling the accounts. Craig's did not offer analysis or evidence showing causation or the effect of the multiple other factors that contributed to the store's historic financial problems.

■ The bank committed itself to being a credit and collection agency; it did not underwrite the success of the venture. The measure of damages had the bank failed to meet a standard would be the difference between the value of the accounts as collected and their value as they should have been collected. While that loss may cause the company to fail, the liability on the contract is limited to the contract.

### 7. Conclusion.

The adversary proceeding brought by Craig's against the bank will be dismissed for lack of jurisdiction. Even if the bankruptcy court had jurisdiction, this court would reverse the judgment on the merits.