In re Roy V. CLAYTER and Joyce E. Clayter, Debtors.

Roy V. CLAYTER, Joyce E. Clayter, and Lance Clayter, Plaintiffs,

v.

Florence M. LARKIN, Security Financial & Mortgage Corporation, Thorne, Larkin, Brown, Inc. d/b/a Coldwell Banker, Thorne, Larkin, Brown Realtors, Larkin Homes, Inc. and Larry D. Nicholas, Defendants.

Bankruptcy No. 93–20969.
Adv. No. 94–6013.

United States Bankruptcy Court,
D. Kansas.

Oct. 5, 1994.

Ronald M. Baugh, Kansas City, MO, for Debotors and Lance Clayter.

Stanley E. Oyler of Ascough, Eschmann, Oyler, P.A., Topeka, KS, for Florence M. Larkin, Thorne, Larkin, Brown, Inc. d/b/a Coldwell Banker, Thorne, Larkin, Brown Realtors and Larkin Homes, Inc.

A. Bradley Bodamer of Morrison & Hecker, Overland Park, KS, for Security Financial & Mortg. Corp.

## MEMORANDUM OPINION

JOHN T. FLANNAGAN, Bankruptcy Judge.

The Court decides that it lacks jurisdiction over this adversary complaint[1] but in the alternative, even if it has jurisdiction, it should abstain.

Debtors filed for relief under Chapter 13 on May 18, 1993. Their Schedule A lists real property located at 2804 16th Street, Leavenworth, Kansas, at a value of $73,000.00. While the Summary of Schedules indicates that a one-page Schedule C is attached, no such Schedule C for Property Claimed As Exempt appears in the Court file. Schedule D lists the Federal Home Loan Mortgage Corporation ("FHLMC") as having a claim of $72,039.13 secured by debtors' Leavenworth home. Schedule D also shows Security Financial & Mortgage Corporation ("Security") as the mortgage servicer for the FHLMC.

The Court confirmed the debtors' Chapter 13 plan by order filed September 9, 1993. The plan proposed monthly payments to FHLMC/Security of $737.79 for the regular home mortgage payment and $301.23 for an arrearage payment. Under the terms of the plan and the confirmation order, the residence revested in the debtors upon confirmation and left the bankruptcy estate.

Debtors and their son, Lance Clayter, who is not a party to the Chapter 13 case, filed the captioned adversary complaint on February 4, 1994. The complaint contains 200 paragraphs of allegations. Compressed here for brevity, they make the following averments about the various named defendants and the real property listed in the schedules:

1. Sometime in 1978 or earlier, the Cleveland Park Subdivision Plat of Leavenworth, Kansas, indicated that a dedicated, but unconstructed 16th Street divided Blocks 24 and 25 of the subdivision. This linear division ran from Limit Street on the south to Vilas Street on the north (hereinafter "16th Street"). Complaint ¶ 9.

2. On or before October 1978, a sewer line (the "16th Street Sewer Main") was buried in a straight line under the dedicated but unconstructed 16th Street. Complaint ¶ 10.

3. In approximately October 1978, the City of Leavenworth approved the replatting of Cleveland Park Subdivision Blocks 24 and 25 as the "Pioneer Subdivision." Complaint ¶ 11.

4. The Pioneer Subdivision Plat reconfigured 16th Street into a sweeping "S" configuration so that the new 16th Street (hereinafter the "Curved 16th Street") embraced only the last 145 feet or so of the original 16th Street roadbed before intersecting Vilas Street. Complaint ¶ 12.

5. The location and linear construction of the 16th Street Sewer Main did not change when the Curved 16th Street was constructed. Consequently, the sewer main is not under or even near certain locations of the Curved 16th Street between Limit Street and Vilas Street. Complaint ¶ 13.

6. On or about October 1978, the original dedicated roadbed of 16th Street cut across Pioneer Subdivision Lots 9, 10, 11, and 12. Complaint ¶ 14.

7. Approximately half of Pioneer subdivision housing Lot 10 (hereinafter "Pioneer Lot 10") consists of the 60–foot wide dedicated roadbed of the original 16th Street. Complaint ¶ 15.

8. On or about October 1978, the 16th Street Sewer Main manhole (16th Street Sewer Main Manhole") was located roughly at the center of Pioneer Lot 10 near the housing setback line. It was approximately 30 feet from the Curved 16th Street. Complaint ¶ 16.

9. On or before January 1983, Florence Larkin, president of Larkin Homes, purchased certain parcels of the Pioneer Sub-

1. Roy V. Clayter and Joyce E. Clayter, debtors, and Lance Clayter, their son, appear by their attorney, Ronald M. Baugh, Kansas City, Missouri. Defendants Florence M. Larkin; Thorne, Larkin, Brown, Inc. d/b/a Coldwell Banker, Thorne, Larkin, Brown Realtors; and Larkin Homes, Inc. appear by their attorney, Stanley E. Oyler of Ascough, Eschmann, Oyler, P.A., Topeka, Kansas. Defendant Security Financial & Mortgage Corporation appears by its attorney, A. Bradley Bodamer of Morrison & Hecker, Overland Park, Kansas. Larry D. Nicholas does not appear.

division and renamed it the "Briarwood Subdivision." Florence Larkin, Larkin Homes and Coldwell Banker (the "Larkin defendants") became the developer, builder and marketer of Briarwood Subdivision, a middle income housing development of single family homes in the $60,000 to $75,000 price range. Complaint ¶¶ 17–18.

10. During the platting of the Briarwood Subdivision in approximately June of 1983, the Larkin defendants created Briarwood Subdivision housing lots 4, 5, 6 and 7 from the area previously known as Pioneer Subdivision housing Lots 10, 11 and 12. Complaint ¶ 20.

11. The Larkin defendants reduced the size of Briarwood Subdivision housing Lot 4 such that more than one third of its land area was within the dedicated roadbed of the original 16th Street; the 30-foot housing setback line was several feet inside the 16th Street Sewer Main easement; and the 16th Street Sewer Main Manhole was located roughly in the center of the lot. Complaint ¶¶ 23–25.

12. In 1986, during construction of the debtors' home on Lot 4 of the Briarwood Subdivision, the 16th Street Sewer Main was cracked or shattered. As a result, raw, untreated sewage began saturating the soil beneath debtors' home. Complaint ¶¶ 30, 32.

13. Debtors did not receive a report of the damage done to the 16th Street Sewer Main. Complaint ¶ 35.

14. Sometime thereafter, the damaged sewer main under Briarwood Subdivision Lot 4 was improperly and inadequately repaired, so infected sewage continued to seep into the soil. Complaint ¶¶ 37, 39.

15. During construction, a sump pump was installed in the basement of the home to prevent sewage accumulation and flooding. Complaint ¶ 41.

16. Grass sod was laid over the 16th Street Sewer Main manhole which was now located just in front of the front door to debtors' home. Complaint ¶¶ 45–46.

17. In February 1987, Security Financial & Mortgage Corporation approved the debtors' mortgage application, but debtors' did not receive written notification of the mortgage commitment. Complaint ¶ 101.

18. On or about February 27, 1987, the debtors, representatives of Security Financial & Mortgage Corporation and the Larkin defendants executed papers consummating the sale and title transfer of the debtors' previous home on 2nd Avenue to Florence Larkin. Complaint ¶ 130.

19. On or about February 27, 1987, the debtors, representatives of Security Financial & Mortgage Corporation and the Larkin defendants executed papers consummating the sale and title transfer of the home on 16th Street to the debtors. Complaint ¶ 132.

The complaint prays for compensatory damages in excess of $1,000,000; for punitive damages in excess of $10,000,000; and for attorneys' fees, costs, expenses, and interest.

No theory of recovery under the Bankruptcy Code is sought. Rather, the debtors rely on theories of liability based upon state law in the following respects:

a. In order to induce the debtors to purchase the 16th Street property, the defendants made false and fraudulent statements and failed to disclose material information about the 16th Street property and related financial transactions which resulted in damage and injury to the debtors. Complaint ¶¶ 141–160.[2]

b. The defendants were negligent in their failure to provide the debtors with truthful information which resulted in damage and injury to the debtors. Complaint ¶¶ 161–167.

c. The defendants have breached their contract with the debtors, causing injury and damage to the debtors. Complaint ¶¶ 168–170.

d. The defendants have breached their fiduciary duty to the debtors. Complaint ¶¶ 171–177.

e. The defendants have violated the Kansas Consumer Protection Act. Complaint ¶¶ 177–183.

**2.** The complaint contains two sets of paragraphs numbered 141–157. The Court is referring to the second set found in section III.A., "Fraud and Deceit."

**140**

f. The defendants have wrongfully retained or acquired $13,000.00 from the debtors from the closing on the 2nd Avenue property. Complaint ¶¶ 192–196.

In addition to the state law causes of action plead, the complaint alleges that defendants have violated the Resource Conservation and Recovery Act. (Complaint ¶¶ 184–191.) The complaint does not give the citation to this statute, but the Court's research shows the Act to be a federal law found at 42 U.S.C. § 6901 *et seq.* Title 42 of the United States Code covers Public Health and Welfare and the quoted sections appear under the heading of "Solid Waste Disposal."

■ Although the plaintiffs allege a right of recovery under the Resource Conservation and Recovery Act, they make no prayer for any relief other than damages. While a federal district court would have jurisdiction under the foregoing Act, the relief available to plaintiffs under the Act is restricted to injunction and enforcement of civil penalties payable to the government. There is no articulated private right of action for damages available to plaintiffs under this federal statute. *Walls v. Waste Resource Corp.,* 761 F.2d 311, 316 (6th Cir.1985); *Commerce Holding Company, Inc. v. Buckstone,* 749 F.Supp. 441, 445 (E.D.N.Y.1990); *Portsmouth Redevelopment and Housing Authority v. BMI Apartments Associates,* 847 F.Supp. 380, 385 (E.D.Va.1994).

At a pretrial conference held on May 15, 1994, the parties were given 10 days in which to brief the issue of this Court's jurisdiction over this adversary proceeding. Yet no briefs have been filed. By letter dated June 13, 1994, counsel for Security advised the Court that he would not be filing a brief. By letter dated June 17, 1994, counsel for debtors also indicated that he would not be filing a brief, adding, "Our conclusion is that there is nothing to compel the Court to retain jurisdiction over this case."

*CONCLUSIONS OF LAW*

Section 1334(b) of Title 28 of the United States Code confers original, but not exclusive, jurisdiction in the district court over all civil proceedings arising under Title 11, or arising in or related to cases under Title 11. All cases and proceedings in, under or related to Title 11 are referred to the bankruptcy judges of this district by 28 U.S.C. § 157(a) in conjunction with D.Kan. Rule 705.

■ "Arising under" jurisdiction is the narrowest form of bankruptcy jurisdiction. It extends to matters based solely on rights created under Title 11. *Wood v. Wood (Matter of Wood),* 825 F.2d 90, 97 (5th Cir.1987) (stating that, for example, a suit to avoid a preferential transfer "arises under" Title 11 because the suit is based solely on 11 U.S.C. § 547). No such jurisdiction exists here since state law causes of action, not Bankruptcy Code remedies, are being asserted.

■ "Arising in" jurisdiction uses a "but for" test to define its contours. Proceedings are said to arise in a Title 11 case if they are "'administrative matters' that arise *only* in bankruptcy cases." *Wood v. Wood (Matter of Wood),* 825 F.2d 90, 97 (5th Cir.1987). Certainly, that is not the case here since the claims for relief could have been made in state court in the first instance.

■ The 10th Circuit has adopted the test for determining "related to" jurisdiction expressed in the 3rd Circuit case of *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984). Under that test, whether a civil proceeding is "related to" a bankruptcy case depends on "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 994. *Gardner v. United States (In re Gardner),* 913 F.2d 1515, 1518 (10th Cir.1990) (holding that "the bankruptcy court lacks related jurisdiction to resolve controversies between third party creditors which do not involve the debtor or his property unless the court cannot complete administrative duties without resolving the controversy").

■ Since the debtors' Chapter 13 plan has been confirmed, it is inconceivable that the outcome of this lawsuit will affect the administration of the estate. The real property involved has been revested in the debtors by 11 U.S.C. § 1327(b), there being nothing in the plan or the confirmation order to make the Code section inoperative. If the debtors realize a recovery on their causes of

action before the plan payments are completed, someone could file a motion to modify the plan to apply the recovery to plan payments, but such an eventuality is too remote a contingency to affect the estate at this point. No administrative difficulty results from the pendency of the lawsuit. In this Court's opinion, this adversary proceeding does not qualify as "related to" this bankruptcy case and this Court is without jurisdiction to hear the claims for relief asserted in the complaint.

■ Moreover, this Court doubts that the district court itself would exercise jurisdiction to hear the state law causes of action sued upon here. There is no allegation of diversity of citizenship relating to the parties involved. *See* John T. Cross, *Congressional Power to Extend Federal Jurisdiction to Disputes Outside Article III: A Critical Analysis from the Perspective of Bankruptcy,* 87 Nw.U.L.Rev. 1188 (Summer 1993). Under these circumstances, the district court would have to base federal jurisdiction on the bare allegation that the Resource Conservation and Recovery Act is sufficiently involved to create jurisdiction. Yet, plaintiffs' prayer for relief is for damages, a remedy not available to the plaintiffs under that Act. To base jurisdiction on that statute, the district court would have to use a supplemental jurisdiction theory to take cognizance of the state law claims. 28 U.S.C. § 1367. *See also* Susan Block–Lieb, *The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis,* 62 Fordham L.Rev. 721 (Feb.1994). Under the supplemental jurisdiction statute, however, the district court may decline to exercise jurisdiction over a claim if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). This seems a likely possibility when the federal statute conferring jurisdiction on the district court, 42 U.S.C. § 6901 *et seq.,* does not provide the remedy plaintiffs request.

■ Even if this Court is in error and has "related to" jurisdiction over this adversary proceeding, it does not follow that it must exercise jurisdiction. Section 1334(c) of Title 28, United States Code, sets forth provisions for mandatory and discretionary abstention that impact on the Court's decision. Section 1334(c)(1) provides for the Court to exercise discretion by abstaining "in the interest of justice, or in the interest of comity with State courts or respect for State law." The section reads:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Section 1334(c)(2) provides for mandatory abstention and states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11, but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

■ Although this adversary proceeding does not contain all of the elements necessary for mandatory abstention, an examination of the elements of the mandatory abstention provision guides the Court in determining whether to exercise discretionary abstention under § 1334(c)(1). Courts often look to the mandatory abstention provisions as a guide to whether they should exercise discretionary abstention. If most of the elements of mandatory abstention are present, they are inclined to exercise discretionary abstention. *See Counts v. Guaranty Savings & Loan Assoc. (In re Counts),* 54 B.R. 730, 736 (Bankr.D.Colo.1985); *Braucher v. Continental Illinois Nat. Bank & Trust (In re Illinois–California Express, Inc.),* 50 B.R. 232, 240–241 (Bankr.D.Colo.1985).

■ The first element of mandatory abstention requires the filing of a timely motion. Although there is no such timely motion on file in this adversary proceeding,

142

that fact is not an express requirement for discretionary abstention and it has been held that the abstention question can be raised by the court *sua sponte*. In *In re Terracor*, 86 B.R. 671, 677 (D.Utah 1988), the court states that:

For the court to harbor doubts regarding the propriety of continuing this proceeding, pending the parties raising the abstention issue, would be inconsistent with judicial responsibility. Matters involving abstention come within the general context of subject matter jurisdiction. Questions involving subject matter jurisdiction may be asserted by any party at any time or raised by a court *sua sponte*.

The opinion cites several cases standing for the proposition that abstention may be raised by the court *sua sponte*. *Id.* at n. 15.

■■■ The second element of mandatory abstention requires that the proceeding be based upon a state law cause of action. This is clearly the case here. Plaintiffs seek damages arising out of their purchase of a home constructed on property contaminated by a broken sewer main. They allege fraud, negligent misrepresentation, breach of contract, breach of fiduciary duty, violation of the Kansas Consumer Protection Act, and unjust enrichment. While they also allege violation of the Resource Conservation and Recovery Act, a federal statute, they seek only damages, a form of relief the statute does not provide them. They are dealing here with viable state law causes of action only.

■■■ The third element of mandatory abstention requires that the adversary proceeding be "related to" a case under Title 11 but not arise under Title 11 or arise in a case under Title 11. Matters "arising under title 11, or arising in a case under title 11" are "core proceedings." *See* 28 U.S.C. § 157(b)(1). Core proceedings are those which have no existence outside of bankruptcy. *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir.1990). Non-core proceedings are those which do not depend on the bankruptcy laws for their existence and which could proceed in another court. As we have seen, plaintiffs' cause of action falls within the non-core area of bankruptcy power.

■■■ If this Court is in error and this adversary proceeding is viewed as "related to" the bankruptcy case, the relationship is so slight in degree that it justifies abstention. In *National Union Fire Insur. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325, 332 (8th Cir.1988), the court noted that resolution of a claim may have a peripheral impact on the bankruptcy estate sufficient to meet the *Pacor* test for establishing the existence of related jurisdiction, but still be insufficient to require the court to exercise such jurisdiction. *See also Federal Deposit Insur. Corp. v. Derryberry (In re Wicecarver)*, 110 B.R. 957, 960 (Bankr.D.Kan. 1990) (citing *U.I.U. Health & Welfare Fund v. Levit (In re Futura Indus., Inc.)*, 69 B.R. 831, 835 (Bankr.E.D.Pa.1987)) ("[t]he degree to which the related proceeding is related to the bankruptcy case, as a practical matter, will doubtless be an important factor in the decision whether to abstain").

■■■ The fourth element requires an action that could not have been commenced in a federal court absent bankruptcy jurisdiction. Of course, any action can be commenced in a federal court if the plaintiff can afford the filing fee. But that is not the sense in which the word "commenced" is used. What is meant is that the action must be one over which federal jurisdiction has not been otherwise granted. In that sense, the above-captioned adversary proceeding lacks a colorable claim that the action could have been "commenced" in a federal court absent jurisdiction under 28 U.S.C. § 1334.

■■■ The fifth and last element provides that the Court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction. There are differing views, however, on whether or not a pending state court action is a prerequisite for mandatory abstention. *See World Solar Corp. v. Steinbaum (In re World Solar Corp.)*, 81 B.R. 603, 609–12 (Bankr.S.D.Cal. 1988) (concluding that a pending state court action is not a prerequisite for mandatory abstention); *cf. Kolinksy v. Russ (In re Kolinsky)*, 100 B.R. 695, 704 (Bankr.S.D.N.Y. 1989) (stating that a pending state action in

an appropriate forum is an essential element for mandatory abstention). Some courts merely decide whether such an action can be filed on a timely basis in a state court of appropriate jurisdiction. *World Solar Corp.*, 81 B.R. at 612. It is unnecessary to adopt either view at this time in light of this Court's decision to exercise discretionary abstention.

 In the present case, all of the elements of mandatory abstention are met except that a timely motion is lacking, and there is no pending state court action, if in fact that is a prerequisite for mandatory abstention. The Court finds, however, that even if it has jurisdiction, it should exercise discretionary abstention in light of the presence of these elements, along with the Court's concern for judicial economy and the interest of comity with the state courts and respect for state law.

 Furthermore, since the Court has determined that these claims are "non-core" proceedings, this Court would not enter final orders and would be limited to submitting proposed findings of fact and conclusions of law to the district court for its *de novo* review, causing further duplication and judicial inefficiency. *See* 28 U.S.C. § 157(c)(1). These proceedings involve issues of state law, and respect for state law favors state courts interpreting the laws of the state forum. *Braucher v. Continental Illinois Nat. Bank & Trust (In re Illinois–California Express, Inc.)*, 50 B.R. 232, 240 (Bankr.D.Colo.1985). "Where a state court proceeding sounds in state law and bears a limited connection to debtor's bankruptcy case, abstention is particularly compelling." *National Union Fire Insur. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325, 332 (8th Cir.1988) (citation omitted).

This Court finds that it has no "related to" jurisdiction over these state law causes of action, but even if it does, it should exercise discretionary abstention in the above-captioned adversary proceeding.

 This proceeding is a claim by the debtors, not against them; therefore, it is not necessary to grant relief from the automatic stay as a part of this order. The debtors are free to sue in state court.

 Finally, the Court is advised that on September 27, 1994, plaintiffs filed a motion for voluntary dismissal of their adversary complaint. Under Fed.R.Bankr.P. 7041(a), automatic dismissal without order of the Court cannot occur since the defendants have answered and the motion was not accompanied by a stipulation signed by all appearing parties. However, the Court will honor the plaintiffs' belated motion for voluntary dismissal since it is consistent with this opinion.

IT IS THEREFORE ORDERED that the plaintiffs' motion for dismissal of the above-captioned adversary proceeding is sustained and the adversary complaint is dismissed without prejudice for the reasons stated herein.