**In re Albert SHUMAN t/a Frankford Cleaners, Debtor.**

**In re Harriet Shuman, Debtor.**

**Albert Shuman and Harriet Shuman, Plaintiffs,**

**v.**

**Arsen Kashkashian and Casimir Czarnecki, Defendants.**

**Bankruptcy No. 95–19900F.
Adversary No. 01–0470.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 21, 2001.

642

Harry J. Giacometti, Philadelphia, PA for Debtor.

Edwward Sparkman, Philadelphia, PA, trustee.

MEMORANDUM

BRUCE I. FOX, Chief Judge.

On June 8, 2001, these two chapter 13 debtors filed the above-captioned adversary proceeding. Thereafter, both defendants filed a joint answer in response. Although the complaint alleges that bankruptcy subject matter jurisdiction exists, and while the defendants' answer agrees—indeed, both parties asserted that this proceeding was a "core" matter—I had doubts about this court's subject matter jurisdiction under 28 U.S.C. § 1334 to determine this proceeding. Accordingly, I asked all parties to consider the jurisdictional issue. *Accord, e.g., Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995) (federal courts should raise, even sua sponte, jurisdictional issues); *In re Hall's Motor Transit Co.*, 889 F.2d 520, 522 (3d Cir.1989) (same). They have done so, by way of memoranda and argument, and defendant Kashkashian (acting separately from defendant Czarnecki) now contends that jurisdiction is lacking.[1]

The facts surrounding the jurisdictional question are not in dispute.

## I.

The underlying chapter 13 bankruptcy case of Albert Shuman commenced on December 20, 1995. The chapter 13 bankruptcy case of Harriet Shuman began on March 20, 1996. By order dated June 6, 1996, these two cases were ordered jointly administered. *See generally* Fed. R.Bankr.P. 1015. After extensive litigation with one creditor, the debtors were able to confirm under section 1325 a consensual, joint, amended reorganization plan on July 8, 1997.

---

1. The defendant argues in the alternative that, if jurisdiction exists, I should nonetheless abstain from deciding this litigation. I need not reach that alternative issue.

By June, 2001, before the instant proceeding was filed, the debtors had completed their plan payments and had satisfied all objections to their receipt of a bankruptcy discharge under 11 U.S.C. § 1328(a). On June 20, 2001, just after this proceeding was commenced, the trustee filed his final report stating that all funds had been distributed to creditors in accordance with the debtor's plan and the case was ready for closing.[2]

During the course of these chapter 13 bankruptcy cases and until December 8, 2000, both debtors were represented by Arsen Kashkashian, Esquire. On December 8, 2000, Mr. Kashkashian withdrew his appearance and Harry J. Giacometti, Esquire entered his. Mr. Giacometti, on behalf of his clients, filed suit in this court on June 8, 2001 against Mr. Kashkashian and Mr. Casimir Czarnecki.

This complaint alleges that these defendants were assigned a claim by a creditor of Mr. Shuman (which assignment was undisclosed to the debtors). The defendants then financed the debtor's repayment of that claim, received payments from the debtor in connection with that refinancing, but also received distributions from the bankruptcy trustee (via the creditor) to repay that claim.

Based upon this conduct, both debtors claim that the defendants: made material misrepresentations amounting to fraud (count I); violated the Pennsylvania Unfair Trade Practices Act (count II); committed a state law conversion of the debtors' property or were unjustly enriched (count III). In addition the claim requests that the defendants "turnover" to the debtors all plan distributions received, all loan payments received, and all fee payments made to former counsel, pursuant to 11 U.S.C. § 542 (count IV). They seek in excess of $50,000.00 in damages.

In addition to these claims, the debtors/plaintiffs seek a declaration that the loan notes still outstanding in favor of the defendants are "null and void ab initio" due to the defendants fraud and due to alleged violations of 11 U.S.C. §§ 329, 364 and 549. They also seek an accounting, and the return of all funds paid (count V).

Before this bankruptcy court litigation was filed in June 2001, Ms. Shuman, both individually and as "executrix of the estate of Albert Shuman," brought suit in state court against Mr. Kashkashian and his law firm, Kashkashian & Associates. This lawsuit was filed in Philadelphia County Court of Common Pleas in January, 2001.[3]

This state court complaint—attached to defendant Kashkashian's legal memorandum seeking dismissal of this adversary proceeding—includes (but is not limited to) factual allegations which serve as the basis for the relief sought in the instant adversary proceeding. The state court complaint asserts eight separately based counts for monetary relief against the state court defendants including a claim that Mr. Kashkashian committed malpractice, *inter alia*, for his handling of the Shumans' bankruptcy cases and for his actions in connection with the assignment to him of a creditor's claim. The state court action also includes a claim for fraud

---

**2.** There is often a delay between the distribution of all plan payments and the filing by the chapter 13 of this final report. The trustee must await the negotiation of all checks and the receipt by him of the canceled checks before his final report may be submitted.

**3.** While the state court action refers to the "estate" of Mr. Shuman, and a pleading filed with the state court asserts that Mr. Shuman died "[i]n the spring, 2001" (Plaintiff's Memorandum . . . In Opposition to Defendants' Preliminary Objections, at 6) this later bankruptcy court lawsuit contains no reference to his death.

based, in part, upon alleged misrepresentations made by Mr. Kashkashian to the Shumans during his bankruptcy court representation of them.

Apparently, the state court defendants filed "preliminary objections," *see* Pa. R.Civ.P. 1017(a), seeking to dismiss that action. The parties have not provided all of the pleadings in that matter, but Mr. Kashkashian did attach a copy of plaintiffs' memorandum in opposition to defendants' preliminary objections filed in state court.

A portion of this memorandum addresses the right of plaintiffs to sue in state court. They asserted in response to defendants' challenge:

A. *Plaintiff is the Real Party in Interest and Has Standing to Sue*

As their first argument, Defendants state that, because the Shuman [sic] had filed bankruptcy, the bankruptcy estate is the real party in interest and as a result, Mrs. Shuman does not have standing to maintain this action individually or as the Executrix of her husband's estate. Defendants' Memorandum of law in Support of the Preliminary Objections ("Defendants' Memorandum") at p. 7. In making this argument, Defendants conveniently ignore the facts of the Shuman Bankruptcy, the orders issued by the bankruptcy court as well as the U.S. Bankruptcy Code.

On or about July 8, 1997, the bankruptcy court entered an Order confirming the Shumans' Plan of Reorganization under Chapter 13 of the U.S. Bankruptcy Code. *See* Plaintiff's Response to Preliminary Objective ("Plaintiff's Response"), ¶ 18 and Exhibit "A" thereto. The Order plainly states:

"that *all property of the estate*, including any income, earnings, other property which may become a part of the estate during the administration of the case which property is not pro-

posed, or reasonably contemplated, to be distributable to claimants under the plan *shall revest in the debtor(s)*; provided, however, that no property received by the trustee for the purpose of distribution under the plan shall revest in the debtor except to the extent that such property may be in excess of the amount needed to pay in full all allowed claims as provided in the plan."

Plaintiff's Response, Exhibit "A" (emphasis added). *See also* U.S. Bankruptcy Code, 11 U.S.C. § 1327(a) (except as otherwise provided in the confirmation order, "the confirmative of a plan vests all of the property of the estate in the debtor"); 11 U.S.C. § 1327(b) (property vesting in debtor is "free and clear of any claim or interest of any creditor provided for by the plan").

Additionally, the Shumans have completed making all payments required pursuant to their bankruptcy plan. *See* Plaintiff's Response, ¶ 18 and Exhibit "B" hereto. Accordingly, the Shumans are entitled to a discharge order from the Bankruptcy Court which discharges them from any secured or unsecured debt owed to any creditor. 11 U.S.C. § 1328. Thus, there is no legal right or basis for the bankruptcy estates to retain any assets of the Shumans, including their claims against Defendants.

Because the claims raised in this action have clearly revested in the Shumans, both by Court Order and as a matter of law, this Preliminary Objection must be denied.

*See* Defendant Kashkashian's Memorandum of Law Regarding Jurisdiction, Ex. B, at 7–8.

The parties have suggested that this state court action is still pending.

## II.

After I posed the question regarding subject matter jurisdiction, defendant Kashkashian argues that no such jurisdiction exists. For reasons which follow, I agree.

■■■ A federal court, in deciding whether to dismiss a proceeding for lack of subject matter jurisdiction, presumptively lacks jurisdiction over that proceeding unless the plaintiff affirmatively demonstrates that jurisdiction exists. *See, e.g., Commodity Futures Trading Comm'n v. Nahas,* 738 F.2d 487 (D.C.Cir.1984); *Lucas v. Gulf & Western Industries, Inc.,* 666 F.2d 800, 805 (3d Cir.1981); *Walnut Associates v. Saidel,* 164 B.R. 487, 490 (E.D.Pa. 1994). This proposition is no less true for bankruptcy courts which, despite their expanded jurisdictional grant found in 28 U.S.C. § 1334, remain courts of limited jurisdiction. *See, e.g., Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984); *In re U.S. Seating Co., Inc.,* 105 B.R. 259, 260 (Bankr.E.D.Pa.1989). "The burden of establishing the requisite jurisdictional facts rests on the plaintiff as the party alleging their existence." *Lucas v. Gulf & Western Industries, Inc.,* 666 F.2d at 805; *accord Walnut Associates v. Saidel,* 164 B.R. at 490.

In deciding whether the plaintiffs have demonstrated the existence of subject matter jurisdiction, I note that bankruptcy adversary proceedings can be grouped into three general categories for purposes of determining subject matter jurisdiction under 28 U.S.C. § 1334.

■■■ First, there are "core" proceedings, which may be heard and resolved by the bankruptcy court *via* final judgment. *See* 28 U.S.C. § 157(b)(1). Core proceedings represent those disputes so intertwined with the bankruptcy process that Congress has the power under Article I of the Constitution to direct a non-tenured judicial officer (i.e., bankruptcy judge) to render a final determination of their merits. *See* 1 *Norton Bankruptcy Law and Practice 2d,* § 4.26 at 4–154 (1999) ("The word 'core' was a shorthand word employed to signify issues and actions that traditionally formed part of the functions performed under federal bankruptcy law").

■■■ Core proceedings contain two subsets: those that "arise under" or those that "arise in" the bankruptcy case. As the Third Circuit has explained:

Our circuit precedents have "held that a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Marcus Hook Dev. Park Inc.,* 943 F.2d 261, 267 (3d Cir.1991) (citations and internal quotation marks omitted). In support of its ruling that this case was a core proceeding, the bankruptcy court relied, inter alia, on the decision of the Court of Appeals for the Fifth Circuit in *In re Wood,* 825 F.2d 90 (5th Cir.1987), which observed that the phrases "arising under" and "arising in" are helpful indicators of the meaning of core proceedings. If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under

section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*In re Guild and Gallery Plus, Inc.,* 72 F.3d 1171, 1178 (3d Cir.1996); *accord Halper v. Halper,* 164 F.3d 830, 836 (3d Cir. 1999).

■ Thus, a proceeding is classified as "core" under 28 U.S.C. § 157 "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Marcus Hook Development Park, Inc.,* 943 F.2d 261, 267 (3d Cir.1991) (quoting *Beard v. Braunstein,* 914 F.2d 434, 444 (3d Cir.1990) which, in turn, quoted *Matter of Wood,* 825 F.2d at 97). Accordingly, "[i]f the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding...." *In re Guild and Gallery Plus, Inc.,* 72 F.3d 1171, 1178 (3d Cir.1996); *see* L. King, 1 *Collier on Bankruptcy,* ¶ 3.01[4][c][iv] (15th ed. rev.2001) (proceedings "arise in" a bankruptcy case when they involve "administrative matters"—*e.g.,* the grant or denial of confirmation; the assumption or rejection of a contract).

■ The second category of proceedings is referred to as "non-core" or "related" proceedings. A bankruptcy court may hear such proceedings but may submit only proposed findings of fact and conclusions to the district court, *see* U.S.C.

§ 157(c)(1), unless all parties agree that a final judgment may be entered in bankruptcy court. U.S.C. § 157(c)(2); *see, e.g., Halper v. Halper,* 164 F.3d 830, 836 (3d Cir.1999). The Third Circuit Court of Appeals has defined a non-core proceeding in the following terms:

> Non-core proceedings include the broader universe of all proceedings that are not core proceedings but are nevertheless "related to" a bankruptcy case. *See* 28 U.S.C. § 157(c)(1). "[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) (emphasis omitted); *see In re Guild.,* 72 F.3d at 1180–81. "[T]he proceeding need not necessarily be against the debtor or against the debtor's property." *In re Guild,* 72 F.3d at 1180–81. "'A key word in [this test] is conceivable. Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling and administration of the bankrupt estate.'" *Id.* at 1181 (quoting *In re Marcus Hook,* 943 F.2d at 264) (emphasis omitted).

*Halper v. Halper,* 164 F.3d at 837 (footnote omitted).[4]

---

**4.** The Supreme Court in *Celotex Corp. v. Edwards* discussed the concept of a "related" proceeding in the following terms:

> Proceedings "related to" the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate....
>
> In attempting to strike an appropriate balance, the Third Circuit in *Pacor, Inc. v. Higgins,* 743 F.2d 984 (1984), devised the

following test for determining the existence of "related to" jurisdiction: [quoting language at 743 F.2d at 994]. The First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits have adopted the Pacor test with little or no variation.... The Second and Seventh Circuits, on the other hand, seem to have adopted a slightly different test.... But whatever test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor.

Typically, litigation which is related to a bankruptcy case is litigation which will affect in some manner the property to be administered by the bankruptcy trustee or the amount or priority of claims to be repaid. *See, e.g., Matter of Xonics, Inc.,* 813 F.2d 127, 131 (7th Cir.1987) (a proceeding is "related to" a bankruptcy case when "it affects the amount of property available for distribution or the allocation of property among creditors").

Finally, the third category of proceedings are those which fall outside the definition of "non-core" because their outcome would have no effect upon the bankruptcy case. The outcome of a dispute will not have any effect on the bankruptcy case generally because it will not affect the property to be administered in the bankruptcy case, the total assets to be distributed, or the total claims to be paid. Over these "unrelated" proceedings a bankruptcy court has no subject matter jurisdiction. *See, e.g., In re Guild and Gallery Plus, Inc.,* 72 F.3d at 1181–82; *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984).

### III.

Before applying these basic principles to the instant proceeding, three additional points about bankruptcy subject matter jurisdiction should be emphasized.

### A.

First, it is important to make clear that the concept of a "related" proceeding is simply wider in scope than that of a "core" proceeding; these two jurisdictional categories are not completely separate and distinct. Rather, all "core" proceedings must be "related" to a bankruptcy case and so may be considered a subset of the broader set. *See In re Central Ice Cream Co.,* 82 B.R. 933, 936 (N.D.Ill.1987) ("a proceeding that is not a related proceeding *a fortiori* cannot be a core proceeding").

Indeed, the Third Circuit Court of Appeals recognized this point in *In re Marcus Hook Development Park, Inc.,* 943 F.2d 261, 264 (3d Cir.1991) when it explained that, for proposes of determining subject matter jurisdiction, the classification issue of "core" versus "related" is immaterial. The appellate court held (agreeing with other circuit courts) that when determining whether a bankruptcy court has the power to determine a dispute, a court need only decide whether the proceeding "is a least 'related to' the bankruptcy." *Id.*[5]

If core proceedings could be unrelated to a bankruptcy case, the jurisdictional question could only be resolved by analyzing both aspects of the classification issue. Thus, the court in *Marcus Hook* understood that a proceeding "not related" to the bankruptcy case cannot possibly be a core proceeding.

Therefore, I must respectfully disagree with the analysis of *In re Simmons,* 205 B.R. 834 (Bankr.W.D.Tex.1997), which concluded that a malpractice action which occurs during a bankruptcy case is a core proceeding, because it "arises in" the

---

*Id.,* 115 S.Ct. at 1499 n. 6.

While the Court found it unnecessary to officially endorse the *Pacor* definition of a "related proceeding"—however, it also did not disapprove of it—it recognized that proceedings which have no effect upon property of estate or upon the administration of the debtor's case are outside the scope of bankruptcy jurisdiction.

**5.** The categorization of a proceeding as core or non-core only affects a bankruptcy court's power to enter a final judgment without the consent of the parties. It does not affect the bankruptcy court's power to hear the dispute. *See Matter of Walker,* 51 F.3d 562, 568–69 (5th Cir.1995); *Matter of Wood,* 825 F.2d 90, 93 (5th Cir.1987); *In re Reed,* 94 B.R. 48, 51 (E.D.Pa.1988).

bankruptcy case, even if the proceeding is not related to that bankruptcy case because its outcome could have no conceivable effect upon the administration of that case, nor affect the asset or liabilities in the case. *Id.,* 205 B.R. at 841.

Numerous decisions implicitly reach a conclusion opposite to *Simmons.* For example, in *Gonzalez v. Arana,* 43 F.3d 423 (Table), 1995 WL 32644 (1st Cir.1995), in *Remington v. Offen,* 1997 WL 152803 (E.D.Pa.1997) and in *Thomas v. Toaltoan,* 1995 WL 262568 (E.D.Pa.1995), the plaintiffs each asserted that their bankruptcy attorneys committed malpractice during the course of their bankruptcy cases and sought relief in federal court. In all three instances, these federal courts concluded that no federal jurisdiction existed simply by virtue of the occurrence of the alleged tort during the course of the bankruptcy case itself.

Indeed, the defendant in *National City Bank v. Coopers and Lybrand,* 802 F.2d 990 (8th Cir.1986) took the "arising in" construction accepted in *Simmons* to its logical extension by attempting to remove a state court action to federal court as a "core" bankruptcy matter.

The defendant was an accounting firm which was sued in tort under state law by a creditor of a bankrupt entity for not discovering the plaintiff's improper perfection of its lien. This lien interest was avoidable under section 544 in the debtor's bankruptcy case, thereby forcing the plaintiff/creditor to accept less from the debtor on its claim. The plaintiff argued that as its lien interest was avoidable under bankruptcy law, and as it received less than it would have received in the bankruptcy case but for the defendant's actions, its claim for damages "arose in" a bankruptcy case.

The Eighth Circuit concluded that no bankruptcy court jurisdiction existed for this state law claim:

C & L next argues that the present action "arises in" and is "related to" Title 11. C & L argues that NCB's claim would not have arisen but for Wickes, GSK's and GCC's petitions for reorganization raising the question of avoidability, which is at the core of NCB's claims. Further, C & L asserts that the present action is "related to" the bankruptcy action because the underlying dispute involves a review and clarification of the bankruptcy proceedings.

We hold that the district court properly concluded that the present action was not one "arising in" or "related to" the bankruptcy proceedings. The district court relied in part on the decision of the Third Circuit in *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984) (*Pacor*). National City Bank, slip op. at 12–13. In *Pacor,* the court stated that the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.... An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and administration of the bankrupt estate. 743 F.2d at 994. We agree with the reasoning of the *Pacor* court and with the conclusion of the district court that the present action cannot affect the bankruptcy estate of Wickes or its subsidiaries.

Accordingly, we affirm the order of the district court remanding the present action to the state court because of a lack of bankruptcy jurisdiction.

*Id.,* 802 F.2d at 993–94.

Similarly, in *In re Heath,* 115 F.3d 521 (7th Cir.1997), the Seventh Circuit deter-

mined that a dispute over a fee imposed by an employer upon sending a portion of the employee/debtor's wages to the bankruptcy trustee was an unrelated matter even though the wage deduction occurred as a result of the bankruptcy case.

 If, however, events occur during a bankruptcy case which would give rise to a cause of action, and if the outcome of that litigation could affect the administration of the bankruptcy case by, for example, either increasing the assets to be distributed to creditors or by reducing the amount to be paid to a creditor, then such litigation is related to the bankruptcy case. Therefore, in *In re O'Dowd,* 233 F.3d 197 (3d Cir.2000), the Third Circuit concluded that a malpractice claim against debtor's former bankruptcy counsel was "property of the estate" within the meaning of 11 U.S.C. § 541(a) even though the claim arose post-bankruptcy. By inference, a tort action involving estate property is at least related to the bankruptcy as it would affect the assets to be distributed to creditors. Accordingly, such a dispute may be determined by the bankruptcy court.

Furthermore, in *Billing v. Ravin, Greenberg & Zackin, P.A.,* 22 F.3d 1242 (3d Cir.), *cert. denied,* 513 U.S. 999, 115 S.Ct. 508, 130 L.Ed.2d 416 (1994), the appellate court held that a malpractice claim raised against debtor's former bankruptcy counsel fell within the jurisdiction of the bankruptcy court. Since the malpractice claim was raised, in part, as an objection to the fee application filed by former counsel, the outcome of the claim could affect the award of counsel fees under section 330(a) of the Code and thus affect the administrative expenses of the estate.

Therefore, in determining defendant Kashkashian's present request to dismiss this proceeding for lack of jurisdiction, I need determine only whether the proceeding is a "related" proceeding. If so, then jurisdiction exists and dismissal is unwarranted. If not, then the proceeding must be dismissed. *See Matter of Walker,* 51 F.3d 562, 568–69 (5th Cir.1995).

### B.

 The second point that should be emphasized is that the "relatedness" of a proceeding to a bankruptcy case will be dependent not simply upon the claims asserted in the litigation but also upon the nature of bankruptcy case which is then pending.

 As the Supreme Court has explained, "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989); *Natural Resources Defense Council, Inc. v. Texaco Refining and Marketing, Inc.,* 2 F.3d 493, 502 (3d Cir.1993). Therefore, the jurisdictional determination for the instant proceeding must be made as of June 8, 2001.[6]

6. The plaintiffs raise the concern in page 4 of their memorandum that if a time-sensitive approach to bankruptcy subject matter jurisdiction is applied, then jurisdiction would be "lost" in a bankruptcy case if, they posit, the litigation outlasts the length of a reorganization plan. This concern, however, overlooks that jurisdiction is determined as of the date the complaint is filed. Later events do no deprive a bankruptcy court of jurisdiction, if jurisdiction existed when the proceeding was commenced.

There are instances, however, in which a bankruptcy court may have jurisdiction at the outset of a proceeding, but subsequent events call into question the appropriateness of the continued exercise of that power. For example, if an adversary proceeding is filed in a bankruptcy case and then that bankruptcy case is later dismissed, such an event will then raise the issue of retention of federal jurisdiction over that proceeding. Retention of jurisdiction over proceedings commenced

Although broad, "[a] bankruptcy court's 'related to' jurisdiction is not limitless." *Celotex Corp. v. Edwards,* 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). As mentioned above, there must be some nexus between the proceeding and bankruptcy case then pending. *Accord, e.g., In re Guild and Gallery Plus, Inc.,* 72 F.3d at 1181; *Matter of Lemco Gypsum, Inc.,* 910 F.2d 784, 788 (11th Cir.1990). Thus, if the outcome of a dispute could not have any effect on the bankruptcy case at the time the litigation is commenced—*e.g.,* by affecting the property to be administered, the total assets to be distributed or the total claims to be paid—then a bankruptcy court may not hear the dispute.

Since jurisdiction is dependent upon the effect, if any, that a particular proceeding may have upon a given bankruptcy case at the time it is filed, it is not surprising that similar types of disputes may have an effect in one bankruptcy case but not in a different case. The most common examples of this principle arise in disputes between creditors or between a creditor and a third party. Sometimes those types of non-debtor disputes may conceivably have an impact upon a bankruptcy proceeding; if so, then there is jurisdiction in the bankruptcy court to decide them. *See, e.g., In re M. Paolella & Sons, Inc.,* 161 B.R. 107 (E.D.Pa.1993), *aff'd without op.,* 37 F.3d 1487 (3d Cir. 1994); *see generally Matter of Xonics, Inc.,* 813 F.2d 127 (7th Cir.1987). Other times, the outcome of the dispute will affect only the rights of the particular creditors or third parties inter se, without making any difference in the bankruptcy case

itself. *See, e.g., Matter of Walker,* 51 F.3d at 569; *In re Fietz,* 852 F.2d 455 (9th Cir.1988); *Matter of Kubly,* 818 F.2d 643 (7th Cir.1987); *In re Pettibone Corp.,* 135 B.R. 847 (Bankr.N.D.Ill.1992); *In re Haug,* 19 B.R. 223 (Bankr.D.Or.1982).

When one considers, for example, the nature of the bankruptcy filing–i.e., chapter 7 versus chapter 11–and the assets available for distribution as well as the types of claims asserted against the bankruptcy estate, the same type of dispute may fall within the jurisdictional boundary in one bankruptcy case but not in another.

For instance, the relative priority of liens may be of significance in a chapter 7 case where the collateral is being liquidated. If, however, the collateral were not to be administered by the chapter 7 trustee (usually because there is no equity in the property), then the relative position of the lien creditors would make no difference to the administration of that bankruptcy case. The priority question will matter greatly to the creditors upon foreclosure, but that dispute can and must be resolved in a non-bankruptcy forum when it arises. *See Matter of Kubly.*

Often, but not always, disputes between a creditor and a debtor fall within bankruptcy jurisdiction as related to the pending case. *See generally Walnut Associates v. Saidel,* 164 B.R. at 490. There are, however, exceptions to this general rule. For example, in a no-asset chapter 7 case—which means that no assets will be distributed to unsecured creditors—generally there is no reason to hear a challenge to a creditor's unsecured proof of claim, even if raised by the debtor, since the allowance of the claim is irrelevant to the

---

prior to dismissal is permitted in certain circumstances by decisions such as *In re Smith,* 866 F.2d 576, 580 (3d Cir.1989). The issue of retention of jurisdiction, which involves a discretionary determination, is distinct from the

non-discretionary determination whether a bankruptcy court has jurisdiction at the outset of the proceeding. *See In re Almarc Corp.,* 94 B.R. 361, 364 n. 4 (Bankr.E.D.Pa.1988).

administration of the case. *See also In re Bumann,* 147 B.R. 44, 45 (Bankr.D.N.D. 1992) (court declines to fix amount of claim in a dischargeability proceeding). Similarly, in a chapter 11 case, when the debtor has confirmed a plan of reorganization which clearly will provide for no distribution to unsecured creditors, an outstanding objection to an unsecured proof of claim has no impact whatever on the bankruptcy case and falls outside court jurisdiction, even ·if raised by the debtor. *In re Malone,* 74 B.R. 315, 321 (Bankr.E.D.Pa. 1987).

To repeat, litigation which is related to a bankruptcy case generally is litigation which will affect in some manner the property to be administered by a chapter 11 debtor in possession or a bankruptcy trustee, or the amount or priority of claims to be repaid. *See, e.g., Matter of Xonics, Inc.,* 813 F.2d 127, 131 (7th Cir.1987) (a proceeding is "related to" a bankruptcy case when "it affects the amount of property available for distribution or the allocation of property among creditors"). Such a potential increase or decrease in estate property, or potential increase or decrease in liabilities of the estate, is sufficient to confer subject matter jurisdiction over a bankruptcy proceeding. *See, e.g., Diamond Mort. Corp. v. Sugar,* 913 F.2d 1233, 1239 (7th Cir.1990), *cert. denied,* 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991); *Brock v. Morysville Body Works, Inc.,* 829 F.2d 383, 385 (3d Cir.1987) ("enforcement of the Commission's citations against [the debtor] will undoubtedly alter its liabilities and have an impact on the administration of the debtor's estate").

### C.

The third jurisdictional point worth noting concerns timing. Not only may a determination of a bankruptcy court's "related to" jurisdiction over disputes be affected by the type of bankruptcy case pending, by the parties to the dispute and by the dynamics of the particular bankruptcy case, but the issue of jurisdiction may also be influenced by the timing of the dispute—that is, when during the course of the bankruptcy case does the dispute occur.

Here, this dispute arises only after confirmation of an amended chapter 13 plan of reorganization. In the chapter 11 reorganization context, "[a]lthough the jurisdiction of the bankruptcy court continues until the Chapter 11 case is closed ... once a plan has been confirmed, the court's [subject matter] jurisdiction begins to weaken." *Walnut Associates v. Saidel,* 164 B.R. at 491. "There exists a residue, albeit limited, of court authority over a confirmed chapter 11 case." *In re Cinderella Clothing Indus., Inc.,* 93 B.R. 373, 377 (Bankr.E.D.Pa.1988). As I explained in *In re Cinderella Clothing Indus., Inc.,* 93 B.R. at 376:

> Since at least 1944, courts have recognized the competing interests between retaining jurisdiction after confirmation until entry of the final decree (see Bankr.R. 3020), and ending the "tutelage" status of reorganization, a period "which may limit and hamper [the corporation's] activities and throw doubt upon its responsibility." *North American Car Corp. v. Peerless Weighing & Vending Mach. Corp.,* 143 F.2d 938, 940 (2d Cir.1944).

> Courts have balanced these two concerns in various ways .... However, it has long been recognized, without dispute, that the bankruptcy court's jurisdiction continues post-confirmation:

> to protect its [confirmation] decree, to prevent interference with the execution of the plan and to aid otherwise in its operation.

**652**

(footnotes and citations omitted); *accord, e.g., Walnut Associates v. Saidel,* 164 B.R. at 492; *In re Morgan & Morgan, Inc.,* 24 B.R. 518, 521 (Bankr.S.D.N.Y.1982) ("The order of confirmation marked the commencement of the period when a debtor is weaned from dependence on the bankruptcy court's injunctive powers so as to stand on its own feet with respect to post-confirmation matters").

 The notion that there is a more limited scope of subject matter bankruptcy jurisdiction over proceedings filed after confirmation of a bankruptcy reorganization plan follows from the definition of a "related" proceeding and from the principle that jurisdiction is determined based upon the facts which existed when the complaint was filed. Before confirmation, proceedings which may affect the debtor's ability to propose and gain acceptance of a viable chapter 13 plan are within the scope of court jurisdiction. *See Matter of Heath,* 115 F.3d at 524. After confirmation, the court need no longer consider the effect of a proceeding on the debtor's ability to confirm a plan. Since a plan has already been confirmed, and unless property of the estate is involved, the court need only consider whether the outcome of the proceeding could affect the post-confirmation rights and responsibilities of parties governed by the pending bankruptcy case. *See id.; Walnut Associates v. Saidel,* 164 B.R. at 492 ("Indeed, after a plan has been confirmed, subject matter jurisdiction is specifically conferred on the bankruptcy court to resolve only post-confirmation matters, including issues necessary to carry out the plan.").

Thus, if the outcome of the post-confirmation proceeding would have no effect on the compliance with or completion of the reorganization plan, no effect upon property of the estate, and no effect upon the rights of the parties in the bankruptcy case, then it could have no effect upon the pending bankruptcy case, and the parties are left to resolve their dispute in the appropriate non-bankruptcy forum. *Accord, e.g., In re TransAmerican Natural Gas Corp.,* 127 B.R. 800 (S.D.Tex.1991) (post-confirmation litigation, which was removed to the bankruptcy court, had to be remanded for lack of subject matter jurisdiction); *In re Almarc Corp.,* 94 B.R. 361, 366 (Bankr.E.D.Pa.1988) (the outcome of the post-confirmation proceeding would have no affect on the debtor's implementation of its approved plan and so was an unrelated proceeding). *Compare Eubanks v. Esenjay Petroleum Corp.,* 152 B.R. 459 (E.D.La.1993) (proceedings were related to the pending bankruptcy case as their outcome could affect the debtor's ability to consummate his confirmed plan).

In the context of chapter 13 cases, the Seventh Circuit has held that a bankruptcy court has no jurisdiction to hear a dispute over an employer's assessment against the debtor's wages of a "garnishment" fee. *Matter of Heath.* This fee was imposed by the employer as an administrative cost for sending a portion of the debtor's wages to the chapter 13 trustee. The trustee, in turn, would distribute these funds according to the terms of the debtor's plan.

As the fee was assessed post-confirmation and as the fee did not reduce the amount of money sent to the trustee or distributed to creditors, the Seventh Circuit concluded that the fee did not involve estate property and did not affect the debtor's plan payments or the administration of the case. Accordingly, the trustee's challenge to this fee was not related to the pending chapter 13 case and so was outside the subject matter jurisdiction of the bankruptcy court. *Id.,* 115 F.3d at 524.

Similarly, a chapter 13 post-confirmation dispute between the debtors and a party seeking to purchase realty owned by them was outside bankruptcy court jurisdiction.

*In re Resendiz,* 1986 WL 4551 (N.D.Ill. 1986). The plan was confirmed and did not provide for the sale of the property. Once the plan was confirmed, the property "revested" in the debtor under 11 U.S.C. § 1327(b) and was no longer estate property. Thus, the dispute over the sale of realty was a contest involving property of the debtors, the outcome of which would have no affect upon the administration of their chapter 13 case or the amounts distributed to creditors. *Id.; see In re Clayter,* 174 B.R. 134 (Bankr.D.Kan.1994) (post-confirmation lawsuit brought by the debtors raising non-bankruptcy claims was outside bankruptcy court jurisdiction):

> Since the debtors' Chapter 13 plan has been confirmed, it is inconceivable that the outcome of this lawsuit will affect the administration of the estate. The real property involved has been revested in the debtors by 11 U.S.C. § 1327(b), there being nothing in the plan or the confirmation order to make the Code section inoperative. If the debtors realize a recovery on their causes of action before the plan payments are completed, someone could file a motion to modify the plan to apply the recovery to plan payments, but such an eventuality is too remote a contingency to affect the estate at this point. No administrative difficulty results from the pendency of the lawsuit. In this Court's opinion, this adversary proceeding does not qualify as "related to" this bankruptcy case and this Court is without jurisdiction to hear the claims for relief asserted in the complaint.

*Id.,* 174 B.R. at 140–41.

In *In re Craig's Stores of Texas, Inc.,* 266 F.3d 388, 390–91 (5th Cir.2001), the Fifth Circuit Court of Appeals concluded that post-confirmation bankruptcy court jurisdiction is restricted (at least in a chapter 11 case) to "matters pertaining to the implementation or execution of the plan." The Third Circuit Court of Appeals has not accepted this narrow approach to post-confirmation jurisdiction. It has retained the more general "related to" definition: whether the outcome of the [litigation] could alter either the rights—broadly defined—or liabilities of parties in interest in the pending bankruptcy case. *See United States Trustee v. Gryphon at the Stone Mansion, Inc.,* 166 F.3d 552, 555–56 (3d Cir.1999).[7] Nonetheless, the "relatedness", if any, of litigation to a bankruptcy case is clearly affected by the timing of the litigation. Thus, disputes that may have been related to the case were they to arise pre-confirmation may not be related if they first occur post-confirmation.

### IV.

 At the time the instant adversary proceeding was filed, these chapter 13 cases were just about ready to be closed pursuant to 11 U.S.C. § 350(a). The debtors' joint reorganization plan had long since been confirmed. All the payments due the trustee under the plan had been made by these debtors. The trustee had already tendered all distributions to creditors required under the plan. The only objection to the debtors' receipt of a chapter 13 discharge had previously been resolved. Other than the actual entry of the discharge order and the receipt of the trustee's final report, these jointly administered cases were successfully concluded.

---

**7.** In *Gryphon,* the circuit court concluded that the U.S. trustee's demand for quarterly fees from the debtor, post-confirmation, affected the debtor's liabilities and so "could impact the handling and administration of the case." *Id.,* 166 F.3d at 556. The Circuit Court suggests that such fees, if owed by the debtor, would be a chapter 11 administrative expense to be paid first from estate property. *Id.,* at 557.

The outcome of the instant adversary proceeding—which primarily raises state law causes of action—will therefore affect the rights only of these plaintiffs and defendants. The defendants will either be liable to the plaintiffs or not. The plaintiffs will either be obligated on the notes held by the defendants or not. Although important to these parties, the outcome of this lawsuit: will not affect the rights or responsibilities of the chapter 13 trustee; will not affect the debtors' compliance with the terms of their plan; will not increase or decrease the assets available for creditors; and will not affect the debtors' entitlement to a bankruptcy discharge nor even the scope of that discharge.

Indeed, as Ms. Shuman argued to the state court, the claims raised in that court as well as in this litigation are not "estate property" within the meaning broad scope

of sections 541(a) and 1306(a)(1) because of the confirmation process. By virtue of section 1327(b), these claims, whenever they arose, "revested" in the debtors. *See Matter of Heath.* The bankruptcy trustee asserts no right to the proceeds of any recovery by either party. Thus, the outcome of this proceeding will have no effect upon the property of the estate which the debtors may retain post-confirmation, nor upon their right to exempt estate property, nor upon the distribution of estate property to the debtors or their creditors.

In short, the outcome of this proceeding will have no greater effect upon the administration of this bankruptcy estate than if the lawsuit had been commenced after these two chapter 13 cases were closed under section 350(a). Therefore, this proceeding is not "related" to the instant bankruptcy case[8] and must be dismissed

---

**8.** The debtors here view allegedly tortious conduct taken by bankruptcy counsel and a third-party, which occurred post-petition, and which assertedly gave rise to damages, as also creating an action for "turnover." As a result, the plaintiffs have raised a claim under 11 U.S.C. § 542(a). Generally, disposition of a turnover action under section 542 is a "core" proceeding. *See generally In re Dean,* 107 F.3d 579, 581–82 (8th Cir.1997).

Whether the debtors are truly seeking a "turnover" as Congress intended that term is debatable. *See Beard v. Braunstein,* 914 F.2d 434, 444 (3d Cir.1990).

Based upon a pre-Code Supreme Court decision, *Maggio v. Zeitz,* 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948), some courts view a turnover action as similar to one *in rem,* addressed solely to specific property or the identified proceeds thereof, which requires the defendant to be in possession or control of the property when the action is commenced. *E.g., In re Robertson,* 105 B.R. 440, 455 (Bankr.N.D.Ill.1989) ("An action for turnover may not be maintained against one not in present possession of the property"); *In re De Berry,* 59 B.R. 891, 895–96 (Bankr.E.D.N.Y. 1986) (" '[I]t is essentially a proceeding for restitution rather than indemnification, with some characteristics of a proceeding in rem; the primary condition of relief is possession of

existing chattels or their proceeds capable of being surrendered by the person ordered to do so. It is in no sense based on a cause of action for damages for tortious conduct such as embezzlement, misappropriation or improvident dissipation of assets' "); *see also In re Welded Const., Inc.,* 339 F.2d 593, 594 (6th Cir.1964) (limiting a "turnover" proceeding to one falling within a bankruptcy court's summary jurisdiction under the former Bankruptcy Act).

Other courts, based upon the specific language of section 542(a) referring to "such property or the value" thereof, permit a turnover action to be brought against a defendant who knew or should have known of the debtor's bankruptcy filing and that it held property of the bankruptcy estate, whether or not the defendant still possessed the property at the time the action was brought. *E.g., Matter of USA Diversified Products, Inc.,* 100 F.3d 53, 56 (7th Cir.1996).

Not only is it problematic whether either of these standards could be met in this case, but decisions which have interpreted section 542(a) have held that this provision applies only to prepetition transfers of property which would become estate property upon recovery. If a post-bankruptcy transfer is involved, then only section 549 applies. *See,*

without prejudice for lack of jurisdiction.[9]

*e.g., In re Thornton's Millwork, Inc.,* 209 B.R. 645, 647 (Bankr.M.D.Pa.1997); *In re 31–33 Corp.,* 100 B.R. 744, 747–48 (Bankr.E.D.Pa. 1989).

A further hurdle for the debtors to meet in section 542 litigation is the recognition that "[o]nly property in which the debtor has an interest that properly becomes part of the bankruptcy estate can be made the subject of an order for turnover under section 542(a)." *In re Lauria,* 243 B.R. 705, 709 (Bankr. N.D.Ill.2000). Given that a plan has already been confirmed, and given their state court argument referring to section 1327(b), the plaintiffs here may not dispute that they do not seek the recovery of estate property from these defendants.

Generally, a court considering bankruptcy subject matter jurisdiction does not decide whether plaintiffs have stated a cause of action or whether the plaintiffs will prevail on the merits of their claims. In this instance, however, my conclusion that the outcome of the section 542 claim can have no effect upon this case implicitly concludes that a "true" turnover action is not involved here, because any recovery by the plaintiffs would not constitute estate property. If these debtors were in fact seeking the recovery of property of the bankruptcy estate, then bankruptcy jurisdiction would in all likelihood lie.

9. By virtue of 42 Pa.Cons.Stat. § 5103(b), Pennsylvania law provides:

that a matter filed in federal court, within the applicable statute of limitations, but dismissed for lack of jurisdiction, may be transferred to state court without a federal court order if the plaintiff promptly fulfills the transfer requirements set forth in section 5103(b)(2).

*Perez v. Shop Rite,* 2001 WL 1360141, *1 (E.D.Pa.2001).

Once a federal court has determined that subject matter jurisdiction is absent, then the court is not responsible for the transfer of the case to state court. State law provides for the litigant to take those steps. *Accord Barbieri v. AER*X Corp.,* 1994 WL 396366, *1 (E.D.Pa. 1994). Thus, I leave it to the plaintiffs to decide whether they wish to comply with the provisions of section 5103(b).